[Civ. No. 28690. Second Dist., Div. One. Aug. 3, 1965.]

THOMAS M. DEACON, Plaintiff and Respondent, v. INTER-NATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 12, et al., Defendants and Appellants.

Brundage, Hackler & Roseman, Brundage & Hackler, Charles K. Hackler and Julius Reich for Defendants and Appellants.

Thomas M. Deacon, in pro. per., Gaston, Keltner & Adair and Robert A. Gaston for Plaintiff and Respondent.

WOOD, P. J.—Petitioner Deacon, who is a member of the respondent union, sought a writ of mandate in the superior court to permit him to inspect the books and records of the

union to verify certain expenditures which the union, in its 1961 annual report to the United States Department of Labor, claimed it had made to its officers. The judgment was that a writ of mandate issue requiring respondents to permit Deacon to inspect the union's 1961 records to verify the reported expenditures to 35 officers, 10 business representatives, and 1 executive secretary of the union. The union and three of its officers[1] (respondents) appeal from the judgment.

Appellants (union and officers) contend that there was no showing of "just cause," as required by federal law,[2] to permit inspection of the union's books and records.

The matter was heard on the petition, the answer, and affidavits supporting and opposing the petition.

The allegations in the petition are in substance as follows: Deacon has been a member of the union for 10 years. Respondent officers have custody of books and records which show expenditures made by the union in 1961. On October 26, 1963, Deacon made a written demand on the officers for permission to inspect said books and records concerning expenses and allowances paid by the union to certain officers in 1961, and the demand was refused. At the request of the union, Deacon provided further information and repeated his demand on November 12, 1963, and that demand was refused. Deacon appealed to the general executive board of the union, the appeal was denied, and Deacon has exhausted his remedies within the union. The union filed a report with the United States Department of Labor in 1961 in accordance with section 431 of title 29 of the United States Code Annotated. The report contains a statement of salaries, allowances and expenses, including reimbursed expenses, which the union purportedly paid to its officers during the year. The report is incorrect and includes expenses which were not in fact incurred and paid. Deacon is entitled to examine the books and records by virtue of his membership in the union and by virtue of section 431 of title 29 of the United States Code Annotated (the Labor-Management Reporting and Disclosure Act of 1959).

The answer in substance admits all of the allegations of

---

[1] The officers have custody of the books and records.

[2] The Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 431, subd. (c).

the petition, but denies that Deacon is entitled, either as a member of the union or under the cited federal law, to inspect the union's books and records.

An affidavit of Joseph Hurley, in support of the petition, is in substance as follows: He is a member of the union and was an officer of the union in 1961. In 1963 he was shown a copy of the report which was made by the union to the United States Department of Labor for the year 1961. The report states that he, as an officer of the union, received, in addition to his wages, $1,700 in allowances, and $978.76 in reimbursed expenses. He "questions" the $1,700 in allowances because he did not hold office from July 22 to November 11, and his allowances of $150 per month would therefore not equal $1,700. He is "absolutely certain" however, that he did not receive the $978.76 which was charged against him for reimbursed expenses. He never submitted any vouchers or receipts for, and never demanded payment of, said $978.76. He believes the report has been falsified insofar as it states that he received said reimbursed expenses.

In opposition to the petition, respondents submitted the declaration of Elgin E. Asbury and two declarations of Eleanor Sheehan.

Mr. Asbury's declaration is in substance that he is the independent certified public accountant of the union; he made a cursory survey of the working papers in connection with the union's report to the Department of Labor for 1961; the survey shows that, with regard to the reimbursed expenses and allowances of the union's officers for that year, there are 1,700 vouchers and 1,700 cancelled checks; and on the basis of his familiarity with the union's books and records, he estimates that it would take not less than 80 "man-hours" to examine said vouchers and checks.

The two declarations of Eleanor Sheehan are in substance as follows: She is the union's accountant, and she prepared the material upon which Mr. Asbury based the union's report to the Department of Labor. To verify the expenses and allowances listed in the report it would take $56\frac{1}{2}$ man-hours to assemble the 1,700 vouchers, and $28\frac{1}{4}$ man-hours to assemble the 1,700 checks. The attorneys for the union have advised her that the vouchers and other books and records are required by law to be kept for five years, and for that reason it is the policy of the union not to permit any person to inspect such documents unless the inspection is supervised by

a representative of the union. With regard to the $1,700 in allowances which the union reportedly paid to Joseph Hurley in 1961, the union records show that checks in the total amount of $1,700 were paid to Mr. Hurley. With regard to the $978.76 in expenses which were reported to have been paid to Mr. Hurley in 1961, the records show that Mr. Hurley was furnished an automobile and two oil company credit cards; a license fee was paid for the automobile; invoices from the oil companies for gasoline, services and repairs to the automobile were paid; some of the invoices were signed by Mr. Hurley; the total amount of the invoices and the license fee was $978.76.

The court found that all of the allegations of the petition were true, and made a conclusion of law that "the petition contains facts sufficient to grant the relief prayed."[3] The judgment recites that there is good cause for issuance of the writ.

Appellants contend that there was no showing of just cause, as required by federal law, to permit inspection of the union's books and records. They concede in their reply brief that the state court has jurisdiction to entertain the cause,[4] but they argue that the state court is required to apply section 431, subdivision (c), of title 29 of the United States Code Annotated in determining whether to permit petitioner to examine the books and records.

Section 431, subdivision (c), of title 29 of the United States Code Annotated provides as follows: "Every labor organization required to submit a report under this subchapter[5] shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty

---

[3]The findings of fact and conclusions of law were not included in the clerk's transcript on appeal, but are in the superior court file which has been transferred to this court upon its own motion.

[4]In *Henderson* v. *Sarle,* 23 Misc.2d 334 [197 N.Y.S.2d 916], a state court assumed jurisdiction of a union member's mandamus action to inspect union records under section 431, subdivision (c). According to statements made in the briefs in the present case, the herein cause was removed to the federal district court which remanded it to the state court, apparently for technical reasons.

[5]Section 431, subdivision (b), provides for the filing by the union of an annual financial report setting forth, among other things, detailed information with regard to salaries, allowances and other disbursements (including reimbursed expenses) made by the union to its officers who received an aggregate sum of more than $10,000 during the year.

enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment award to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.''

Prior to the enactment of section 431, subdivision (c), by Congress, the California Supreme Court, in *Mooney* v. *Bartenders Union Local No. 284,* 48 Cal.2d 841 [313 P.2d 857], held that a union member was entitled to a writ of mandate to permit inspection of the union's books and records relating to expenditures designated in the union's quarterly financial statements. The court noted that, under section 3003 of the Corporations Code, a shareholder could inspect a corporation's books and records, and said (p. 843) : ''The courts will also act *in a proper case* for the purpose of protecting the property rights of a member of an unincorporated association and will enforce, so far as applicable, the rules applied to incorporated bodies of the same character.'' (Italics added.)[6]

In the present case, petitioner in effect sought inspection of the union's records on the ground of his membership in the union *and* on the ground of his rights under section 431, subdivision (c). Appellants argue that inspection of the books and records can be permitted only under section 431, subdivision (c), and cannot be permitted under the state substantive law set forth in the *Mooney* case.

It appears that the policy behind permitting inspection of union records by union members is substantially similar in the state and federal law. Thus, in the *Mooney* case it is said

---

[6]Cf. *Henderson* v. *Sarle,* 23 Misc.2d 334 [197 N.Y.S.2d 916], wherein it was said (p. 918) [197 N.Y.S.2d]: ''As the Senate debates indicate (105 Cong. Rec. 5851ff [April 23, 1959]), the right to inspect books given by the Labor-Management Reporting and Disclosure Act of 1959 is closely akin to the right given a stockholder to inspect corporate books. Mandamus is the procedure whereby the right to inspect corporate books for a proper purpose is enforced. [Citations.] That respondent union is an unincorporated association does not proscribe use of mandamus to enforce the statutory duty enjoined by the Act, . . .'' (Apparently, the reference in this case to pages ''5851ff'' of the Congressional Record is not correct. There is some reference to the subject matter on pages 6521 and 6522.)

(p. 844): "Among the factors to be considered in deter-
mining whether interference by the courts in the internal
affairs of a union is warranted on the basis of public policy is
the nature of the right asserted by the member. The inspec-
tion of records is merely a preliminary step, and, if the man-
ner, time and place are reasonable, the examination cannot
harm any proper union activity. Only after examination of
the records can it be determined whether or not conditions
exist which require correction." The legislative history be-
hind the Labor-Management Reporting and Disclosure Act of
1959 (of which section 431, subdivision (c), is a part) shows
a similar policy. In the official committee reports set forth in
the United States Code Congressional and Administrative
News (1959), volume 2, page 2318, it is said, with reference
to the proposed act: "The . . . bill is primarily designed to
correct the abuses which have crept into labor and manage-
ment and which have been the subject of investigation by the
[McClellan] Committee . . . for the past several years.
. . ." It was said further therein (p. 2324): "This bill in-
sures that full information concerning the financial and in-
ternal administrative regulations of labor organizations shall
be in the first instance available to the members of such or-
ganization. In addition, this information is to be made avail-
able to the Government, and through the Secretary of Labor,
is open to the inspection of the general public. By such dis-
closure, and by relying on voluntary action by members of
labor organizations, abuses can be eradicated effectively."
(See 29 U.S.C.A. § 401, subd. (b).)[7]

Irrespective of whether petitioner has separate rights
to inspect under state law and under federal law, there must
be a proper showing to justify the inspection. In the *Mooney*

---

[7]The similarity of the policy behind the *Mooney* case and section 431,
subdivision (c), is exemplified by comment in an article which analyzed
the *Mooney* case while the congressional investigations were in progress.
That comment is as follows: "The decision of the Supreme Court of
California in the *Mooney* case is . . . highly commendable in enforcing
the right of a member of a labor union to inspect its financial records;
. . . The decision should be viewed in light of the recent and continued
congressional investigations into the labor movement. . . . The members
of labor organizations are the first line of defense against graft and
corruption within their ranks, and as such, they must have the right to
inspect the records of such unions in order to protect both themselves
and society from harmful consequences. . . . Only after examination of
the records can it be determined whether or not conditions exist which
require correction. The trade union can then police itself more effectively
and make recourse to judicial tribunals less frequent, . . ." (9 Hastings
L.J. 96, 101.)

case, as above shown, inspection will be permitted "in a proper case." Under section 431, subdivision (c), inspection will be permitted where there is a showing of "just cause." In the present case the court in effect found that there was a showing of "good cause" for the inspection. There is no material difference between the terms "just cause" and "good cause," and the implication from the language used in the *Mooney* case is that reasonable grounds for the inspection must be shown.

In *Rekant* v. *Rabinowitz* (1961) 194 F.Supp. 194, a union member brought an action under section 431, subdivision (c), to inspect the union's records in order to verify disbursements listed in the union's report filed under section 431, subdivision (b). The member alleged that the report did not disclose the purpose of three items listed as disbursements. The court held that the allegations were "just cause" for inspection of the records. (See *Local No. 1419, ILA, General Longshore Workers Union* v. *Smith* (1962) 301 F.2d 791, 796, where it was also held [citing *Rekant* v. *Rabinowitz, supra*] that there was just cause for inspection of the union's records. The member claimed that statements in the union's report relating to membership dues and initiation fees were fraudulent and incorrect.)

In the present case, petitioner alleged that the report is incorrect and includes expenditures which were not in fact paid. In support of those allegations, petitioner submitted an affidavit of one of the officers to the effect that he had not received the allowances and reimbursed expenses which the report designates that he received. Although the respondents submitted affidavits to the effect that they had examined the records and that the records verified the expenditures referred to in the report, the conflict in the evidence was a matter to be resolved by the trial court. The court in effect found that there was just cause for the inspection, and this finding appears to be supported by the record. Although respondents' affidavits include statements to the effect that it would take 80 hours to examine the records and that it is the "policy" of the union to have such inspection supervised by a union representative, the inspection is merely a preliminary step to determine whether abuses may exist, and it does not appear to interfere unreasonably with the union's policy in view of the broader public policy to be served by permitting the inspection.

Respondent Deacon (petitioner in the trial court) contends

that he is entitled to reasonable attorney's fees under section 431, subdivision (c). As previously indicated, section 431, subdivision (c), provides that the court may, in its discretion, allow plaintiff a reasonable attorney's fee. As shown by the record, the court struck from the proposed judgment (submitted by petitioner) a provision that petitioner Deacon be awarded attorney's fees, and Deacon did not appeal from any part of the judgment. It does not appear that the court abused its discretion in not allowing attorney's fees.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 31, 1965, and appellants' petition for a hearing by the Supreme Court was denied September 29, 1965.