540 F.2d 699
 13 Fair Empl.Prac.Cas. 139,
12 Empl. Prac. Dec. P 11,037
Richard DOCTOR, III, et al., Appellants,
v.
SEABOARD COAST LINE RAILROAD COMPANY, a corporation, et al.,
Appellees.
Richard DOCTOR, III, et al., Appellees,
v.
LODGE 16, BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP
CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION
EMPLOYEES, AFL-CIO, an unincorporated
association, et al., Appellants,
and
Seaboard Coast Line Railroad Company, etc., et al., Defendants.
 Nos. 75-1002, 75-1129.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 13, 1975.
Decided June 30, 1976.
 
 Melvin L. Watt, Charlotte, N. C. (J. Levonne Chambers, Charlotte, N. C., Morris J. Baller, New York City, Chambers, Stein, Ferguson & Becton, Charlotte, N. C., on brief), for appellants in 75-1002 and appellees in 75-1129.
 James L. Highsaw, Highsaw & Mahoney, Washington, D. C., John R. Ingle, Charlotte, N. C. (Craighill, Rendleman & Clarkson, Charlotte, N. C., on brief), for appellants in 75-1129 and appellees in 75-1002.
 Frank P. Ward, Jr., Miami, Fla., Harold A. Ross, Cleveland, Ohio, R. Jeffrey Bixler, Toledo, Ohio (W. T. Covington, Jr., Charlotte, N. C., Richard R. Lyman, Toledo, Ohio, Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., Mulholland, Hickey & Lyman, Toledo, Ohio, Thomas F. Ellis, Robert A. Valois, Maupin, Taylor & Ellis, Raleigh, N. C., Ross & Kraushaar, Cleveland, Ohio, John T. Allred, George V. Hanna, III, Moore & Van Allen, Charlotte, N. C., on brief), for appellee in 75-1002.
 Robert B. Fitzpatrick, Robert T. Lasky, Stephen N. Shulman, Cadwalader, Wickersham & Taft, Robert B. Wallace, Washington, D. C., as amicus curiae.
 Before CLARK,* Supreme Court Justice, Retired, and RUSSELL and WIDENER, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 In this action on a claim of racial discrimination, the plaintiffs, suing both individually and as representatives of separate classes, have appealed from a denial by the District Court of class certification in the case of three of such plaintiffs, the narrowing of class certification in behalf of a fourth plaintiff, and the dismissal of those defendant labor unions, with which none of the plaintiffs had ever been affiliated. The defendant labor unions, on the other hand, have appealed from the order of the District Court finding the failure by the plaintiffs to file their notice of appeal within time excusable in "the interest of justice." We affirm.
 
 
 2
 The action was begun in July, 1971. The plaintiffs were Richard Doctor, III, his son Richard H. Doctor, Frank W. Davis, Sr. and H. D. Goodwin. All the plaintiffs were craft employees at the Hamlet Terminal of the Seaboard Coast Line Railroad Company,[1] employed, save in the case of Richard Doctor, III and H. D. Goodwin, in separate crafts with separate collective bargaining agents. The defendants are the Railroad and the several international and local craft unions, representing as collective bargaining agents the craft employees of the Railroad.[2] The complaint generally charged racial discrimination on the part of both the Railroad and the craft unions, local and international. It alleged the filing of individual charges, setting up individual claims of discrimination, with the EEOC and the issuance of "suit letters" in all cases by the EEOC.[3]
 
 
 3
 After a pre-trial hearing where some inquiry into the claims of the plaintiffs was had, the United States Magistrate entered an order on January 10, 1972, finding that the action was not proper for class certification "for the reasons that:
 
 
 4
 (a) The class is not so numerous that joinder of all members is impracticable.
 
 
 5
 (b) There presently appears to be no questions of law or fact common to a class.
 
 
 6
 (c) The claims or defenses of the plaintiff are not likely to be typical of the claims or defenses of other prospective plaintiffs and the plaintiffs are not likely to fairly and adequately protect the interests of any class in that the exact bounds of the class have not been defined."
 
 
 7
 This order was, however, declared to be "conditional," subject to alteration or amendment "before the decision on its (the case's) merits."[4]
 
 
 8
 There was no objection entered to that order of the Magistrate by either the plaintiffs or the defendants. Discovery thereafter proceeded without objection by any party.
 
 
 9
 After discovery, much of which dealt with the type of case asserted by each plaintiff and his "nexus" with the class he claimed to represent,[5] the defendants moved for summary judgment. In support of such motion, they relied on the discovery testimony and on affidavits submitted by them. At the hearing on this motion for summary judgment, the District Court sua sponte raised anew the propriety of certifying the action as one for class determination.[6] It requested the plaintiffs to submit additional information, as well as a statement of their contentions, on the propriety of class certification and, assuming that certification was proper, on the identifiable classes of whom the individual defendants would be appropriate representatives. The plaintiffs took no exception to such a procedure and proceeded to comply with the District Court's proposed procedure. In identifying the classes claimed to be represented by the individual plaintiffs, they represented to the Court that the plaintiff Richard H. Doctor represented all employees in Conductors Consolidated Seniority District # 1, who had been discharged for reasons based on race, the plaintiff Davis on behalf of all craft employees who had been denied promotion within "the existing craft lines at the Hamlet Terminal for reasons based solely on race," and the plaintiffs Doctor, III and Goodwin on behalf of all "craft employees in the Hamlet Terminal * * * (who) have been confined to the lowest positions in the Seaboard."[7]
 
 
 10
 After reviewing the discovery testimony and the interrogatories, the District Court entered its order on August 7, 1974, denying class certification, so far as the plaintiffs, Richard H. Doctor, Richard Doctor, III and Frank W. Davis, Sr., were concerned, but authorizing their individual claims to continue, and allowing the plaintiff H. D. Goodwin's action to proceed conditionally "as a class action * * * against the defendants, Seaboard Coast Line Railroad Company, Local 717, International Brotherhood of Firemen and Oilers, AFL-CIO, an unincorporated association; and International Brotherhood of Firemen and Oilers, an unincorporated association," defining the class so certified as " '(A)ll blacks employed at the Hamlet terminal who belong to the firemen and oilers craft and are in the positions of Service Workers, Unskilled or Semi-Skilled workers, and have been "locked-in" or have not been promoted because of present or past racial discrimination. In addition, the class includes all blacks employed at the Hamlet terminal who have no craft affiliation and who have sought but have been prevented from entering the firemen and oilers craft because of initial discriminatory hiring in the non-craft position.' " At the same time, the Court denied the motion of the defendant Railroad and those unions, with which any of the plaintiffs were affiliated for summary judgment, but granted it in favor of "all defendant unions of which the plaintiffs are not or were not members."
 
 
 11
 The plaintiffs filed a motion to "alter or amend the Memorandum Order entered * * * on August 7, 1974" seeking to have the Court certify the Memorandum Order for appeal purposes as provided in 28 U.S.C., Section 1292(b). They also, challenged by their motion the dismissal of certain of the craft unions. The District Court denied the motion to amend its prior Order and to certify its Order for appeal purposes as provided in 28 U.S.C., Section 1292(b), in an order entered on October 8, 1974. The plaintiffs mailed their notice of appeal from that order on November 6, 1974, but the notice was not received in the Clerk's office until November 8, 1974. When advised by the Clerk of the District Court that their notice of appeal had been received late and out of time,[8] the plaintiffs moved the District Court "to extend the time for filing the Notice of Appeal herein by one day, to and including the 8th day of November, 1974." The District Court granted the motion, stating:
 
 
 12
 "While the defendants have shown sufficient justification for denying plaintiffs' motion, the Court is constrained to believe that the interest of justice would best be served by allowing the plaintiffs' motion, so that the issues may be resolved on their merits notwithstanding the Court's serious doubt that its orders are appealable, expressed in its Memorandum Order entered October 8, 1974; * * *."
 
 I.
 
 13
 At the threshold of this appeal, we are confronted with the contention by the defendants (1) that the plaintiffs' notice of appeal was untimely and that the District Court was without power to extend the time, absent an express finding of excusable neglect, and (2) that, in any event, the order refusing to certify the claims of the two Doctors and Davis as class actions is interlocutory, appealable only upon a certificate of the trial court under § 1292(b), 28 U.S.C. The District Court, in granting the plaintiffs' motion to extend time to appeal under Rule 4(a), Fed.R.App.P., based its conclusion on the finding "that the interest of justice would best be served by allowing the plaintiffs' motion." The defendants urge that this is not a finding of "excusable neglect" such as is contemplated under the provisions of Rule 4(a) authorizing the District Court to extend the time for appeal. In its finding, it is suggested, the District Court made no reference to "excusable neglect" and stated no justification for plaintiffs' failure to file which could qualify under the rubric of "excusable neglect." It is true that the District Court based its grant of an extension, not on an express finding of "excusable neglect" but on a declaration that "the interest(s) of justice," warranted the extension. It is altogether likely that the District Court was influenced in making such finding by the language of the Advisory Committee's explanation of the scope of the Rule, that:
 
 
 14
 "But the district court should have authority to permit the notice to be filed out of time in extraordinary cases where injustice would otherwise result."[9]
 
 
 15
 Despite this language in the Advisory Committee Notes, it is by no means clear that a finding of "interest(s) of justice" can be read as a specific finding of "excusable neglect" under the Rule. See Pasquale v. Finch (1st Cir. 1969) 418 F.2d 627, 630. Assuming, though, that the finding of the District Court is insufficient as a finding of "excusable neglect," the proper procedure, it would seem, would be to remand the cause to the District Court to determine whether on the record there was "excusable neglect." Evans v. Jones (4th Cir. 1966) 366 F.2d 772, 773. Since we are satisfied with the order of the District Court from which the appeal is taken, it would be a useless formality to remand the cause for this purpose and we shall proceed to consider the appeal without regard to the possible untimeliness of the notice of appeal.
 
 
 16
 There remains the additional preliminary issue of the appealability of the order denying in part class certification. Whether an order granting or denying class certification is reviewable either as a final order or under § 1292(b), 28 U.S.C., when the District Court has, as here, refused to certify the question, has been much debated and has been the subject of conflicting decisions.[10] This Circuit, however, has found such orders, when they deny certification, appealable under § 1292(a)(1), 28 U.S.C.[11] where the plaintiffs have sought injunctive relief. The reasoning behind this result is that the denial of class certification will have the effect of narrowing the scope of injunctive relief as demanded by the plaintiff. Brunson v. Board of Trustees of School Dist. No. 1 (4th Cir. 1962) 311 F.2d 107, 108, cert. denied 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed.2d 690 (1963).[12] The plaintiffs in this case seek injunctive relief. Their appeal, so far as it relates to class certification, is accordingly within the rule enunciated in Brunson, allowing appeal of right from an order of the District Court denying class certification.
 
 II.
 
 17
 The real issue in this case on its merits is whether the District Court abused its discretion in its rulings on class certification.[13] Since the several plaintiffs were employed in separate crafts and seek relief against both the Railroad and their own particular bargaining union, both personally and as representative of their defined class, the maintainability of their class actions was presented by the plaintiffs and was addressed by the District Court separately.[14] We shall accordingly discuss separately the individual plaintiffs and their qualifications to represent the class they claim to represent.
 
 
 18
 (a) Richard H. Doctor
 
 
 19
 Richard H. Doctor applied for work with the Railroad as a trainman in December, 1965. The Railroad promptly employed him as a trainman. He apparently affiliated at that time with the defendant United Transportation Union, Hamlet Division, G.F.L.-C90, and, by reason of such affiliation, with United Transportation Union, AFL-CIO.[15] Shortly thereafter he was inducted into military service and remained on active duty until November, 1968, when he returned to the employ of the Railroad. Within less than six months after he returned, he was promoted by the Railroad to freight conductor and on October 1, 1969, he was advised he was eligible for promotion to passenger conductor, which was the highest category in his craft. These promotions were made despite the fact that Doctor had been disciplined on several occasions for admitted rule violations, some of a serious character. He was, however, discharged on October 16, 1969, because of an alleged "unauthorized removal of property from Kendall Mills * * * from their warehouse at Bethune, South Carolina, which occurred on October the 7th, 1969" while he was working as a conductor on a train servicing such warehouse.[16] Through his bargaining agent, he contested that discharge but, following the collective bargaining procedure, he lost his claim of improper discharge. In his discovery testimony, he asserted that his claim, which he sought to prosecute in this suit, was really against his union "because my claim wasn't properly filed through the union."[17] Moreover, as the District Court stated, plaintiffs made "no showing that other blacks were dismissed for theft while whites were not." His was thus essentially a claim of unfair representation, whether with or without racial overtones, on the part of his collective bargaining agent by reason of the latter's failure to properly present his claim and, after its denial in the initial collective bargaining procedures, to appeal the decision against him and it should be considered as such in determining class certification. See Humphrey v. Moore (1964) 375 U.S. 335, 342-3, 84 S.Ct. 363, 11 L.Ed.2d 370, reh. denied 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 665 (1964); Vaca v. Sipes (1967) 386 U.S. 171, 190-3, 87 S.Ct. 903, 17 L.Ed.2d 842.
 
 
 20
 Rule 23(a) sets forth the "mandatory requirements"[18] that must be satisfied for the maintenance by a plaintiff of a class action;[19] and, while suits involving racial discrimination lend themselves generally to class treatment,[20] a plaintiff does not satisfy the burden that is his in order to qualify as a proper representative to maintain such an action[21] merely because of his or her race or because he designates his action as a class action.[22] "Title VII plaintiffs are not exempted from the prerequisites of Rule 23(a)."[23] To satisfy the requirements of Rule 23, there must be a class of individuals raising the same claims or defenses too numerous for joinder and the plaintiff must be a representative of that class with a claim "typical of the claims or defenses of the class" both "at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, * * *."[24] As stated, the burden of establishing these requirements rests on the plaintiff.
 
 
 21
 In determining whether the plaintiff has met his or her burden, the trial court may look to the pleadings "but '(t)he determination usually should be predicated on more information than the complaint itself affords.' * * * The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential as a part of the vital management role which the trial judge must exercise in class actions to assure that they are both meaningful and manageable." Huff v. N. D. Cass Company (5th Cir. 1973) 485 F.2d 710, 713 (en banc); Dillon v. Bay City Construction Co., Inc. (5th Cir. 1975) 512 F.2d 801, 804; Kamm v. California City Development Co. (9th Cir. 1975) 509 F.2d 205, 209-10; Weathers v. Peters Realty Corporation (6th Cir. 1974) 499 F.2d 1197, 1200; Cruz v. Estelle (5th Cir. 1974) 497 F.2d 496, 499; Yaffe v. Powers, supra (454 F.2d at 1366-7); Rossin v. Southern Union Gas Co., Inc., supra (472 F.2d at 712); Held v. Missouri Pacific Railroad Company (S.D.Tex.1974) 64 F.R.D. 346, 349-50.[25] This, of course, does not mean that the District Court should "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."[26] But a preliminary hearing, addressed not to the merits of plaintiff's individual claim, but to whether he is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23,[27] has never been regarded as violative of the rule stated in Eisen, quoted supra.[28] This is obvious from the decision in Miller v. Mackey International, Inc. (5th Cir. 1971) 452 F.2d 424, 427, the authority which Eisen cites with approval and follows.[29] In that case, the Court had grounded its denial of class certification, in part at least, on a finding that the plaintiff's claim was without merit. The Court found this error, but, in so doing, it did not foreclose an inquiry by the Court into the factors concerned with the prerequisites for a class action under Rule 23; in fact, it remanded the action in order that an adequate record could be made on that specific issue. There, it said (452 F.2d at 431):
 
 
 22
 " * * * We are not, however, prepared to say that class action status was proper. The district judge may have other reasons, unexpressed in his brief order, for denying Miller's motion. In addition, other reasons for refusing class action status may exist outside of this abbreviated record and appear when the question is given a full hearing. We therefore vacate the order of the district judge and remand the case for proceedings not inconsistent with this opinion including a full hearing on the question presented and findings by the district judge." (Emphasis added.)
 
 
 23
 This procedure was recently restated by this same Circuit in Dillon v. Bay City Construction Co., Inc. supra, which was a Fair Housing case. There, the Court said (512 F.2d at 804):
 
 
 24
 " * * * Additionally, the plaintiffs were entitled to discovery which would bear on the always troublesome questions of whether this was or ought to be considered a class action, see F.R.Civ.P. 23 and the terms and conditions, if any, on which it could proceed."
 
 
 25
 The distinction between a hearing on the merits as such and one on maintainability as a class action was stated at some length in the Huff case, supra, where Judge Godbold, speaking for an en banc court, said (485 F.2d at 714):
 
 
 26
 " * * * 'On the merits' is an elusive term at best, not wholly suitable as a guideline in this situation. In a sense much that a plaintiff alleges with respect to his individual claim goes to the 'merits' of his claim. A plaintiff who seeks to represent all employees on a claim of discriminatory denial of promotions might, if the case goes to trial, lose on his individual claim because it turns out that he was never employed by the defendant. Retrospectively one might say he lost 'on the merits.' Yet there is no doubt that the court could lay bare at a preliminary stage this fact concerning the plaintiff, and, having done so, conclude plaintiff was not a proper representative because he lacked the nexus with the class and its interests and claims which is embraced in the various requirements of 23(a) and (b)."[30]
 
 
 27
 It follows that it was entirely proper for the District Court, on the basis of the discovery had, to identify the character or type (but not the merits ) of each plaintiff's claim and then to determine whether there was a class to which such claim of the plaintiff was common and of which it was typical, sufficiently numerous to justify class certification.[31] That it did. And, as we have said, unless there was an abuse of discretion, its resolution of these issues is not to be disturbed.[32]
 
 
 28
 The type or character of Doctor's claim was delineated with precision in the discovery record before the District Court when it made its ruling, denying him the right of class representation. By Doctor's own statement and experience as detailed in his deposition, the Railroad in his area of employment and that was the only area he purported to be concerned with engaged in no racial discrimination in employment or in progression and he had not admittedly been the object of discrimination on the part of the Railroad either in the denial of employment in conditions of employment, or in "progression" or promotion. In his deposition, he made no claim of an "across-the-board" discrimination. His complaint related strictly to the failure of the defendant union to represent him effectively in the discharge hearing, arising out of the alleged theft of a portion of a rail shipment.[33] In his statement of claim, he conceded that there were witnesses against him on this issue but he contended his own crew would support his claim of innocence. Whatever may have been the differences in the respective testimony of the witnesses at the hearing on the charges against Doctor, the initial decision under the collective bargaining procedure itself was against Doctor. His complaint, thus, was patently one basically under Humphrey v. Moore, supra (375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370), which might or might not have racial overtones. That was his claim and not one for racial discrimination in grant of employment, in conditions of employment, or in "progression" in employment. Though the plaintiffs have had almost four years for discovery, they have identified no other employee within Doctor's craft with a similar claim.[34] The requirement neither of numerosity nor of typicality was accordingly established. Barela v. United Nuclear Corporation (10th Cir. 1972) 462 F.2d 149, 153-5; Wilburn v. Steamship Trade Ass'n. of Baltimore, Md. (D.Md.1974) 376 F.Supp. 1228, 1233; McAdory v. Scientific Research Instruments, Inc. (D.Md.1973) 355 F.Supp. 468, 473. On such a record, the District Court did not abuse its discretion in dismissing any class action by Doctor. In so doing, however, the court did not, as the plaintiffs argue, pass on the merits of Doctor's claim of ineffective representation. As we have said, to have done so would, under our decisions, have been error.[35] The District Court considered Doctor's claim and dealt with it but only in the context of whether it qualified for class treatment. It did not inquire into the propriety of Doctor's discharge or the circumstances under which Doctor's union failed to appeal under the provisions of the appropriate collective bargaining agreement. Those were the issues on the merits. It dealt only with the requirements of Rule 23 as they related to his demand for class certification. That procedure followed the guideline fixed in Huff. Doctor still has his individual right of action and nothing in the District Court's order denying him qualifications as a representative of a class prejudges or prejudices that individual claim.
 
 
 29
 (b) Frank W. Davis, Sr.
 
 
 30
 The plaintiff Davis was employed initially as a laborer. He became some years later a machinist's helper in his craft. As such he is a member of the International Association of Machinists and Aerospace Workers, Local 659, AFL-CIO and, by virtue of this, a member also of International Association of Machinists and Aerospace Workers, AFL-CIO.[36] He claims he applied for admission to the machinist apprenticeship program, as a predicate for qualifying as a machinist in his craft, in 1954, 1963 and 1964. Under the collective bargaining agreement covering his craft, there was an age limit, beyond which an employee would not be admitted to the apprentice program for qualification as a machinist. At all times when Davis applied for admission to this apprentice program, he admittedly was beyond the age limit. In 1968, after the passage of the Age Discrimination Act, the Railroad advised him that he was then eligible under that Act for admission to the apprentice program, despite the prior age limitation fixed in the collective bargaining agreement with his craft.[37] Davis was admitted, qualified and was employed in 1971 as a machinist, which, it is stated at least by the defendants, is the highest classification in his craft. His complaint is that, though he has reached the classification sought in his craft, he should have been "given a chance to have been promoted to a machinist earlier." Nowhere does he charge that the age limitation was included in the collective bargaining agreement for purposes of racial discrimination nor does he identify any other blacks who were denied admission to the apprentice program because their age exceeded that limit fixed for admission to the apprentice program. Under the circumstances, we cannot say that the trial court abused its discretion in denying him status as a class representative.
 
 
 31
 (c) H. D. Goodwin and Richard Doctor, III
 
 
 32
 Both Goodwin and Doctor, III are members of the International Brotherhood of Firemen and Oilers, Local 717, AFL-CIO, and, by virtue of that, of the International Brotherhood of Firemen and Oilers, AFL-CIO.[38] The complaint of each is that he has been denied promotion from the lowest position in his craft at the Hamlet Terminal by reason of his race. The District Court denied class certification in favor of Doctor, III but granted it, in part at least, as to Goodwin. Since the certification of Goodwin provides a class vehicle for the adjudication of the rights of the class which both Goodwin and Doctor asserted a right to represent, it is unimportant whether Doctor was certified as a proper representative to prosecute a class action on behalf of the class or not. The class action is maintainable in the name of Goodwin under the order appealed from.
 
 III.
 
 33
 The plaintiffs object to the limitations placed by the District Court on discovery. It does not seem that their objection in this particular relates to the class representation of Goodwin. Goodwin's class claim, as identified by the plaintiffs themselves, is restricted to the Hamlet Terminal and the order of the District Court allows discovery within that area. The plaintiffs' objection really relates to the claim of Richard Doctor. It is argued that Doctor's employment was within a Seniority District consisting of the Raleigh, Rocky Mount and Florence Divisions and that, at least for discovery purposes, the plaintiffs should be entitled to engage in discovery relating to the employment of conductors in these three Divisions. This issue, however, is mooted by our determination that Doctor lacked the required standing to maintain a class suit under Rule 23. We accordingly find no error in the District Court's ruling on the present record to limit further discovery as it did.
 
 IV.
 
 34
 The plaintiffs raise in their pleadings and in argument in this Court the contention that the denial of a right to transfer seniority from craft to craft under the several collective bargaining agreements worked an illegal discrimination. They assert in their brief here that the "(p)laintiff Goodwin presents an individual and representative claim which raises precisely these craft-and-class seniority issues."
 
 
 35
 The law is clear that, while craft or departmental seniority systems are not "per se illegal and a violation of Title VII"[39] they are violative of the Act when they tend to freeze or perpetuate the effect of historic or traditional discrimination in hiring or promotion.[40] But to support a class action which puts in issue whether such a system is violative of the Act, there must be a representative party who has been personally aggrieved. 7A, Wright & Miller, Federal Practice and Procedure, § 1776 at pp. 38-9: Franks v. Bowman Transportation Co., supra, --- U.S. ----, 96 S.Ct. 1251, 47 L.Ed.2d 444; Jenkins v. Blue Cross Mutual Hospital Ins., Inc., supra (522 F.2d at p. 1240); Mason v. Calgon Corporation, supra (63 F.R.D. at p. 105). The plaintiffs recognize this requirement and for this reason they press Goodwin forward as a proper representative who has been "aggrieved", entitled to maintain a class action on this aspect of the case. The difficulty with this argument is that Goodwin does not measure up to the standards of an "aggrieved" party. It is true that, as the plaintiffs point out, he did seek to transfer to the trainmen's craft. This was in 1968, according to his charge as filed with the EEOC.[41] He did not testify, however, that the Railroad at the time was employing only whites in this craft. Indeed, his co-plaintiff Richard Doctor, who was also black, had been hired earlier as a trainman.[42] What he was told was that at the time there were no vacancies in that position. He does not dispute that statement. He accordingly never qualified for employment as a trainman[43] and was never subjected to any loss of seniority by reason of transfer from one craft to another. He was thus not a proper representative of any class of employees who had been "aggrieved" by the seniority system which forbade the carrying over from one craft to another company-wide seniority.[44] Goodwin, however, has been certified as a proper class representative in connection with other charges and, if in the course of the hearings, any evidence develops which might properly enlarge his class representation to include a challenge to the seniority system followed by the Railroad and the craft unions, the District Court could enlarge its class certification to give effect to such showing. And the District Court expressly affirmed in its order its readiness to do so should later testimony indicate a justification for such enlargement. Nor was this an empty gesture, as the same court had demonstrated by its decision in Hairston v. McLean Trucking Company (M.D.N.C.1974) 62 F.R.D. 642, 664, vacated and remanded on other points, 520 F.2d 226 (1975), where it had, prior to the entry of final order, enlarged the class. But, on the record as it presently stands, we find no abuse of discretion on the District Court's part in denying class certification.
 
 V.
 
 36
 The plaintiffs have, also, appealed the dismissal of the complaint against all the labor unions, with which the plaintiffs never had had an affiliation. That order was entered subject to the provisions of Rule 54(b), Fed.R.Civ.Proc., which is as follows:
 
 
 37
 "(b) Judgment upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
 
 
 38
 The District Court in this case has not made an express determination under that Rule "for the entry of judgment" in favor of the labor unions to which the plaintiffs do not or have not belonged. Accordingly, the order of dismissal in their favor is "subject to revision at any time before the entry of judgment adjudicating all the claims." As such, it is not a final order and is not subject to appeal. Sears, Roebuck & Co. v. Mackey (1956) 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297; Smith v. Fairfax County School Board (4th Cir. 1974) 497 F.2d 899; Tracy v. Robbins (4th Cir. 1967) 373 F.2d 13, 14; Ratner v. Scientific Resources Corp. (5th Cir. 1972) 462 F.2d 616, 617, 6 Moore's Federal Practice, § 54.28(2), pp. 367-76.
 
 
 39
 AFFIRMED.
 
 
 
 *
 Sitting by Designation
 
 
 [1]
 The Seaboard Coast Line Railroad Company will be hereinafter referred to as Railroad
 
 
 [2]
 Operating employees of a railroad are grouped in crafts for bargaining purposes under the authority of the Railway Labor Act. 45 U.S.C. § 152; Switchmen's Union v. Board (1943) 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61. Designation of such crafts for bargaining purposes by the National Mediation Board is not judicially reviewable. UNA Chapter, Flight Eng. I. Ass'n. v. National Mediation Bd. (1961) 11 U.S.App.D.C. 121, 294 F.2d 905, 908, cert. denied 368 U.S. 956, 82 S.Ct. 394, 7 L.Ed.2d 388 (1962). Each craft union bargains separately and has individual contracts with the carrier railroad. The individual plaintiffs in this suit were each a member of a defendant craft union
 
 
 [3]
 It is asserted by the defendant labor unions that the charges filed with the EEOC in some instances did not name the union as a party to the alleged discrimination. This is not a matter involved in the present appeal, however. See, however, Werne, A Guide to the Law of Fair Employment, 10 U. of Richmond L.Rev. 209, 290 (1976); Bush v. Lone Star Steel Co. (E.D.Tex.1974) 373 F.Supp. 526, 537
 
 
 [4]
 For a similar use of the office of Magistrate in this type of case, see Yaffe v. Powers (1st Cir. 1972) 454 F.2d 1362, 1364. In that case, however, the Court counseled (p. 1367):
 "Delegations of discrete chores to a magistrate must not be permitted to cause the judge to lose the feel of the pulse of the proceedings."
 
 
 [5]
 The term "nexus" in this connection has been defined in Wells v. Ramsay, Scarlett & Co. (5th Cir. 1975) 506 F.2d 436, 437, n. 3
 
 
 [6]
 See Johnson v. City of Baton Rouge (E.D.La.1970) 50 F.R.D. 295, 298
 
 
 [7]
 See pp. 504-6, Appendix, Plaintiffs' Supplemental Brief, filed July 17, 1974
 The confinement of the proposed class designations by the plaintiffs to operating employees fitted in with the joinder of the various craft unions representing such operating employees.
 
 
 [8]
 Rule 4(a), Federal Rules of Appellate Procedure provides:
 " * * * In a civil case * * * the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days of the date of the entry of the judgment or order appealed from; * * *
 "Upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the court shall deem appropriate."
 
 
 [9]
 Cf., 9 Moore's Federal Practice, § 73.01(22) at p. 3126
 
 
 [10]
 See, General Motors Corporation v. City of New York (2d Cir. 1974) 501 F.2d 639, 644-8 and 656-61 (Mansfield, J., concurring); Note, Appealability of A Class Action Dismissal: The "Death Knell" Doctrine, 39 U. of Chicago L.Rev. 403 (1972); Note, Class Action Certification Orders: An Argument for the Defendant's Right of Appeal, 42 Geo. Washington L.Rev. 621 (1974); Note, Civil Procedure-Class Actions, 25 Vanderbilt L.Rev. 911 (1972); Note, Dismissal of Class Actions, 29 Wash. & Lee L.Rev. 465 (1972), 9 Moore's Federal Practice, § 110.13(9), pp. 184-7, and Note, 44 Fordham Law Rev. 548 (1975)
 
 
 [11]
 This section provides:
 "(a) The courts of appeal shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States, * * * granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions * * *."
 
 
 [12]
 This same view has been taken in Jenkins v. Blue Cross Mutual Hospital Ins., Inc. (7th Cir. 1975) 522 F.2d 1235, 1237-8; Jones v. Diamond (5th Cir. 1975) 519 F.2d 1090, 1095-97; cf., Siebert v. Great Northern Development Company (5th Cir. 1974) 494 F.2d 510, 511; Yaffe v. Powers, supra (454 F.2d at pp. 1364-66); contra, Williams v. Mumford (1975) 167 U.S.App.D.C. 125, 511 F.2d 363, 369, cert. denied 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975). For a general discussion of this construction of § 1292(a)(1) and a review of the authorities, see Note, Class Action Determination, 44 Fordham L.Rev. 548 at 565-8
 
 
 [13]
 Green v. Missouri Pacific Railroad Company (8th Cir. 1975) 523 F.2d 1290, 1299; Bradley v. Southern Pacific Company, Inc. (5th Cir. 1973) 486 F.2d 516, 518; Hill v. American Airlines, Inc. (5th Cir. 1973) 479 F.2d 1057, 1059 (* * * the district court's determination of the existence vel non of a proper class is final unless abuse is shown.") Gold Strike Stamp Company v. Christensen (10th Cir. 1970) 436 F.2d 791, 793; City of New York v. International Pipe & Ceramics Corp. (2d Cir. 1969) 410 F.2d 295, 298. In Bradley the Court said that findings on the matter of class certification, " as those on the merits of the case, are also unassailable unless this Court can determine that they are clearly erroneous."
 
 
 [14]
 Appendix, pp. 575-6
 
 
 [15]
 Paragraph III(C) of the Complaint
 
 
 [16]
 Appendix, pp. 212-13
 
 
 [17]
 Doctor's testimony in this regard is as follows:
 "Q. And I believe you had a couple grievances you just stated; would you repeat those please?
 A. Yes. First of all, the local chairman of the union, Woodrow Garner, before the investigation he told me he went to officials in the company and asked if we could waive my rights, in other words, me say I did it and would accept the discipline the company give me.
 Q. Who was going to make the investigation?
 A. The investigation was carried on by assistant superintendent, which I don't remember now.
 Q. Was it a company investigation?
 A. Yes, this was a company investigation.
 Q. All right?
 A. He told me, anyway he said he went to some officials in the company and asked if I could waive my rights and not have a investigation. In other words
 Q. When you say 'waive your rights', waive the investigation?
 A. Waive the investigation, take full responsibility, you see. This is the reason I did first of all, it backfired. The company wouldn't accept it like this. They said not, they had to have an investigation.
 Q. Before he went to the company did he discuss this with you?
 A. He didn't discuss it, he was going to the company to ask them that. He did it without my knowledge.
 Q. So that was one of your grievances?
 A. That is the first one, right.
 Q. I believe the other one concerned an appeal?
 A. Concerned an appeal after ninety days I'm discharged. The rules according to the agreement with the company and the United Transportation Union, I'm supposed to appeal within ninety days after. Okay, my appeal was not made. When he did finally make it it was turned down. Now he can appeal it again. He didn't carry it farther. Okay, I went to the union meeting and met with the Presidents of the union and it was voted in the union that my claim, my case would be carried as far as it could go. Anyway, it stopped. He stopped with it. It stopped. He's the local chairman. He is supposed to be representing me." (Appendix, pp. 225-7.)
 
 
 [18]
 Wetzel v. Liberty Mutual Insurance Co. (3d Cir. 1975) 508 F.2d 239, 246, cert. denied 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)
 
 
 [19]
 Rule 23(a), Fed.R.Civ.Proc. is as follows:
 "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
 
 
 [20]
 See, Jenkins v. United Gas Corporation (5th Cir. 1968) 400 F.2d 28, 33
 
 
 [21]
 Carracter v. Morgan (4th Cir. 1973) 491 F.2d 458, 459; Poindexter v. Teubert (4th Cir. 1972) 462 F.2d 1096, 1097; 3B Moore's Federal Practice, pp. 23-156
 
 
 [22]
 Rossin v. Southern Union Gas Company (10th Cir. 1973) 472 F.2d 707, 712; Blankenship v. Wometco Blue Circle, Inc. (E.D.Tenn.1972) 59 F.R.D. 308, 309; Mason v. Calgon Corporation (W.D.Pa.1974) 63 F.R.D. 98, 105
 
 
 [23]
 Taylor v. Safeway Stores, Incorporated (10th Cir. 1975) 524 F.2d 263, 269-70
 
 
 [24]
 Sosna v. Iowa (1975) 419 U.S. 393, 402, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, quoted in Franks v. Bowman Transportation Co., Inc. (1976) --- U.S. ----, on p. ----, n. 5, 96 S.Ct. 1251, on p. 1257, n. 5, 47 L.Ed.2d 444. This is necessary to satisfy the "cases and controversies" requirement of Article III of the Constitution. Of course, if the representative party so qualifies, the mere fact that later the representative party's claim is found without merit will not destroy the class action, since "(w)hen the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by (the named representative)." Sosna, 419 U.S. at 399, 95 S.Ct. at 557, quoted and followed in Franks
 
 
 [25]
 In Weathers, the Court said:
 " * * * Maintainability (as a class action) may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide."
 The authors in 7A, Wright & Miller, Federal Practice and Procedure, § 1785, at p. 131, state:
 "The determination (whether to grant class certification) usually should be predicated on more information than the complaint itself affords. Thus, some courts may allow discovery relating to the issue whether a class action is appropriate before deciding whether to allow it to proceed on a class basis."
 See, also, Note, The Class Action and Title VII, 10 University of Richmond L.Rev. 325, n. 5 (1976):
 "The determination (of class certification) may be made on the basis of the pleadings, but generally should be made on the basis of more information than the pleadings afford. See Huff v. N. D. Cass Co., 485 F.2d 710, 713 (5th Cir. 1973). Discovery and a preliminary evidentiary hearing may be appropriate and are authorized with respect to the issues of maintainability."
 Affidavits as well as discovery, may be used in determining the maintainability of the proceedings as a class action. See Ott v. Speedwriting Publishing Co. (6th Cir. 1975) 518 F.2d 1143 at 1150.
 
 
 [26]
 Eisen v. Carlisle & Jacquelin (1974) 417 U.S. 156 at 177, 94 S.Ct. 2140 at 2152, 40 L.Ed.2d 732
 
 
 [27]
 Huff v. N. D. Cass Company, supra (485 F.2d at pp. 712-714)
 
 
 [28]
 See, Professional Adjustment System, Inc. v. General Adjustment Bureau (S.D.N.Y.1974) 64 F.R.D. 35, 38:
 " * * * it is hard to conceive that the Court is limited to a single reading of the complaint (in determining whether to certify under Rule 23) * * *. It should take more than ipse dixit to make a class."
 
 
 [29]
 See 417 U.S. at 178, 94 S.Ct. 2140
 
 
 [30]
 To the same effect is Professional Adjustment Systems, Inc. v. General Adjustment Bureau, supra (64 F.R.D. at 38), where, in discussing the procedure for determining whether class certification was proper, the Court said:
 " * * * The choice must be somewhere between the pleading and the fruits of discovery which are made available to the judge. Enough must be laid bare to let the judge survey the factual scene on a kind of sketch relief map, leaving for later view the myriad of details that cover the terrain.
 "Here the answer is discovery directed at an early stage of the litigation to the very purpose of defining the class or determining that it is too amorphous for judicial handling or that a class action is not superior to other available remedies."
 Blackie v. Barrack (9th Cir. 1975) 524 F.2d 891 at 901, n. 17:
 " * * * While the court may not put plaintiff to preliminary proof of his claim (in order to determine class certification), it does require sufficient information to form a reasonable judgment. Lacking that, the court may request the parties to supplement the pleadings with sufficient material to allow an informed judgment on each of the Rule's requirements."
 
 
 [31]
 See, also, Note, Class Action Hearings on Maintainability, 11 Houston L.Rev. 732, 744, n. 103 (1972); Note Class Action Determination, 44 Fordham L.Rev. 791, 800-1 (1974)
 
 
 [32]
 See note 12
 
 
 [33]
 See White v. Gates Rubber Co. (D.Colo.1971) 53 F.R.D. 412, 414:
 "Because the plaintiff in this case has no personal complaint against the internal employment practices of Gates, and because he has no stake in the alleviation of any illegal practices other than firing, he cannot be considered a proper representative of the entire class of minority employees."
 
 
 [34]
 See Bean v. Star Fibers, Inc. (D.S.C.1972) 17 FR Serv.2d 124, 126; Dennis v. Norwick Pharmacal Co. (D.S.C.1973) 17 FR Serv.2d 126, 128; Tolbert v. Western Electric Co. (N.D.Ga.1972) 56 F.R.D. 108, 114; Kinsey v. Legg, Mason & Co. (D.C.D.1973) 60 F.R.D. 91, 100
 
 
 [35]
 Moss v. Lane Company, Incorporated (4th Cir. 1973) 471 F.2d 853, 855; Brown v. Gaston County Dyeing Machine Company (4th Cir. 1972) 457 F.2d 1377, 1380, cert. denied 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); cf. Martin v. Thompson Tractor Co. (5th Cir. 1973) 486 F.2d 510, 511. Both Moss and Brown are cited with approval in Franks v. Bowman Transportation Co., Inc., supra, --- U.S. ----, at n. 7, 96 S.Ct. 1251, at n. 7, 47 L.Ed.2d 444
 
 
 [36]
 Paragraph III(D), Complaint
 
 
 [37]
 We do not understand that Davis makes any claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C., § 621, et seq. In any event, it is generally held that class certification under that Act is inappropriate. LaChapelle v. Owens-Illinois, Inc. (N.D.Ga.1974) 64 F.R.D. 96, 97, aff'd. 513 F.2d 286; Cooke v. Reynolds Metals Co. (E.D.Va.1975) 65 F.R.D. 539, 540; cf., however, Note, Class Actions under the Age Discrimination in Employment Act, 23 Emory L.Journal 831, 843-4 (1974)
 
 
 [38]
 Paragraph III(B), Complaint
 
 
 [39]
 Heard v. Mueller Company (6th Cir. 1972) 464 F.2d 190, 193
 
 
 [40]
 Quarles v. Phillip Morris, Incorporated (E.D.Va.1968) 279 F.Supp. 505, 516
 
 
 [41]
 The plaintiff Richard Doctor, III, claimed in his charge as filed with the EEOC that he, too, had sought to transfer to the trainman class but such transfer, by his own sworn charge, was denied "to (him) because of (his) medical record." He asserted no claim of discrimination on this account and it is to be assumed this is the reason no attempt was made by the plaintiffs to have him declared a class representative in this particular
 
 
 [42]
 King v. Seaboard Coast Line R. Co. et al. (4th Cir. 1976) 538 F.2d 581, is another case, involving the same employer as here, where a black was employed as a trainman before Goodwin made his application. The complainant in that case made no claim that the Railroad discriminated racially in its employment of trainmen
 
 
 [43]
 See, McDonnell Douglas Corp. v. Green (1973) 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668:
 "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."
 
 
 [44]
 See, League of United Latin American Citizens v. Hampton (1974) 163 U.S.App.D.C. 283, 501 F.2d 843, 845; Barrett v. United States Civil Service Commission (D.C.D.1975) 69 F.R.D. 544, 548-9; Huff v. N. D. Cass Company of Alabama, supra (485 F.2d at 714)