**LOCAL NO. 1419, ILA, GENERAL LONGSHORE WORKERS UNION, AFL–CIO, Appellant,**

v.

**Cornelius SMITH et al., Appellees.**

**No. 19186.**

United States Court of Appeals Fifth Circuit.

April 13, 1962.

---

6. Greis v. Fidelity & Casualty Co. of New York, N.D.Okl., 19 F.Supp. 480.

7. 15 U.S.C.A. § 69 et seq.

Victor H. Hess, Jr., and Jackson & Hess, New Orleans, La., for appellant, Local 1419, I.L.A., General Longshore Workers Union, AFL-CIO.

Benjamin E. Smith and Bruce C. Waltzer, New Orleans, La., for appellees Cornelius Smith et al.

Before JONES, BROWN, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

The complaint here was brought under Title II, § 201(c) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 431(c),[1] by appellees, members of appellant union, seeking to inspect all books and accounts of the union in which they were members relating to membership, dues, and initiation fees for the period September 14, 1959 to the date of inspection. They alleged that the report required and filed under Title II, § 201(b) of the Act, 29 U.S.C.A. § 431 (b)[2] for fiscal year 1959 was fraudulent

1. "Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report."

2. "Every labor organization shall file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers containing the following information in such detail, as may be necessary accurately to disclose its financial condition and operations for its preceding fiscal year—

"(1) assets and liabilities at the beginning and end of the fiscal year;

"(2) receipts of any kind and the sources thereof;

"(3) salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer and also to each employee who, during such fiscal year, received more than $10,000 in the aggregate from such labor organization and any other labor organization affiliated with it or with which it is affiliated or which is affiliated with the same national or international labor organization;

"(4) direct and indirect loans made to any officer, employee, or member, which aggregated more than $250 during the fiscal year, together with a statement

and incorrect as to the number of new members inducted into the union and as to the amount of money collected as initiation fees, and that the practices out of which the fraud arose extended into 1960. They also alleged demand to inspect and refusal. In a supplemental complaint they alleged thefts of initiation fees and dues by named officers of the union, written notice of the thefts to the union president, with no answer, that the report required to be filed by March 31, 1961 under the Act for fiscal year 1960 had not been filed, and also that the secretary of the union had been suspended pending a hearing on charges of embezzling in excess of $38,000 from the accounts of the union. Their prayer was broadened to include the production of the books and records of the union relating to collection and expenditure of union funds, including but not limited to initiation fees and dues. The union answered the original complaint denying the material allegations generally and asserting that the complainants had not shown just cause for the inspection sought and, that the union was under no obligation to open its books and records for 1960 because the report required under the Act for that year had not been filed.

It appeared that the union had three wholly-owned subsidiaries, Glasco, Inc., a recreational organization, Claiborne Drug Store and Geddes-Richards Funeral Home. Complainants, in addition to seeking the books and records of the union under the complaint as supplemented, also served notice under Rule 34, Fed.R. Civ.P., 28 U.S.C.A., for the production of the books and records of these subsidiaries so as to disclose moneys received from the union, salaries and expenses of operation, payments to the union, and the record of prescriptions disbursed without cost by the drug store. The union moved to limit discovery mainly on the

ground that the same relief was being sought by discovery as under the complaint and without a hearing and determination on the merits, and because discovery should be delayed until an audit of the books and records of the union in process had been completed. The court left the matter in abeyance but ordered that a copy of the audit be made available to the complainants.

Complainants then filed a document designated as a supplemental motion for production of documents showing that the audit disclosed a discrepancy and loss of union funds through April 24, 1961, of $45,000 and did not cover the financial condition of the subsidiaries, contending that an audit of the subsidiaries would furnish additional evidence of thefts, discrepancies and losses. They stated that the union had refused to furnish them with an audit of the subsidiaries or an opportunity to examine their books. The union then moved simultaneously to limit discovery and to dismiss the complaint. The motion to limit was on the grounds that the original complaint was premature, the litigation was moot and no good cause had been shown for such inspection. The motion to dismiss was premised on mootness and prematureness. Complainants then moved for summary judgment.

It appears without dispute that the president of the union upon the taking of his deposition refused to state whether or not he would allow complainants to examine the books and records of the union and its subsidiaries. There was a shortage in the union accounts of approximately $45,000, the secretary of the union had been relieved of his duties because of the shortage and charges had been filed against him, no audit had been made of the books of the subsidiaries, many fruitless efforts had been made by complainants to obtain access to the books, and the report required under the

of the purpose, security, if any, and arrangements for repayment;

"(5) direct and indirect loans to any business enterprise, together with a statement of the purpose, security, if any, and arrangements for repayment; and

"(6) other disbursements made by it including the purposes thereof;
all in such categories as the Secretary may prescribe."

Act had been filed for fiscal year 1959 when the original complaint was filed.

The court after hearing all pending motions granted the motion for summary judgment ordering the union to make available all books and records of the union and subsidiaries to complainants and/or their auditors for the following purpose and on the stated terms and conditions:

"These books, records and accounts are to be furnished to plaintiffs and/or their auditors for the period of September 14, 1959, to date, for the purpose of verifying the financial report required by the Labor-Management Reporting and Disclosure Act of 1959 to be filed by the said Union and which were filed by the said Union for the years 1959 and 1960.

"All of the above described documents are to be made available to complainants and/or their auditors at the defendant Union's Hall, 2700 So. Claiborne Avenue, New Orleans, Louisiana on August 7th, 1961, at 10 o'clock A.M. and for a reasonable period thereafter, said period being whatever may be reasonably necessary for the complete inspection and audit of the said documents. The said documents herein ordered to be made available to complainants and/or their auditors are to be furnished to them with access for their examination under circumstances reasonably designed to allow careful scrutiny and analysis."

The union contends on appeal that the District Court erred in refusing to dismiss the complaint on the ground that it was prematurely brought, and for the reason that all issues in the case became moot during the course of litigation. It is also contended that the court erred in ordering the union to make the books and records of the subsidiary corporations available when they were not parties to the action, and in ordering the union to make its books and records available for inspection by persons other than members of the union, namely auditors, and

that the court erred in rendering summary judgment without a trial on the merits.

■ The complaint was not prematurely brought. The union had filed the required report for fiscal year 1959 and good reason to doubt its accuracy was alleged in the complaint. The complaint sought the right to inspect the books and records as to membership, dues and initiation fees for that period and up to the date of the inspection and the amended complaint expanded the prayer to include all books and records of the union relating to collection and expenditure of funds. The motion to produce included books and records of the subsidiary corporations. Based on the allegations of fraud and the admitted shortages we think that the union members were entitled to examine these books and records. The discovery of fraud together with the demand to inspect set off a chain reaction to the extent that it was reasonably necessary to inspect on this expanded basis to determine the verity of the 1959 report. While the litigation was pending the report for 1960 came also into focus for verification under the Act. Nor did the matter become moot during the course of litigation as it is undisputed that the union management never consented to an inspection of the books and records to this extent.

There were no unresolved issues of material fact to prevent the grant of the motion for summary judgment under Rule 56(c), Fed.R.Civ.P. Indeed, the very argument of mootness indicates that the union is willing to make the books and records available which are necessary to verify the reports.

This brings us to the more substantive grounds of appeal, those which are most strenuously urged in the briefs, and which were most strenuously urged on oral argument. The first of these is that the court erred in making available the books and records of the subsidiary corporations.

The audit of the union made after this litigation began by an auditor employed by the union officers shows that the union had assets of over $700,000, liabilities of

over $300,000 and a net worth of almost $400,000. It had income during the calendar year 1960 of over $400,000 and this exceeded the expenses for the year by only $4,424.09. Items of expense among others were $119,283.69 for salaries, $19,927.34 for medicines, $4,504.84 to Glasco, Inc., $45,545.00 for sick relief and $58,900.00 for death benefits. There are no listed receipts from or disbursements to the drug store or funeral home.

The special report of the auditor showed a shortage of $45,049.03 and this shortage was based on discrepancies in the cash count, records of collection of dues and initiation fees, and in records of deposits of funds turned over to the union by the drug store which deposits were in amounts less than those shown on copies of receipts given to the drug store manager. The auditor stated that these discrepancies were found by a review of the books and records of the union, plus an inspection of the duplicate receipts, bank statements, cancelled checks, deposit slips and cash receipts journal of the drug store.

The auditor in pointing out the procedures followed in making the audit stated that the investment shown on the audit of a total of $92,179.99 in the subsidiaries [3] was based on a summary of assets over liabilities of each. It was stated that no one of the subsidiaries had a full set of books or up to date financial statements and that the auditor, in the case of the drug store, was not in a position to satisfy himself as to the fairness of amounts shown for the merchandise inventory, the liabilities or the cash on hand at December 31, 1960, that the information available as to the other two subsidiaries was incomplete, and closed by saying that no opinion could be expressed as to whether the amounts invested in the subsidiaries was a fair representation of investments as of the close of the audit period, December 31, 1960, in accordance with generally accepted accounting principles. Balance sheets on each of the subsidiaries are set out.

The annual financial report that the union is required to file under the Act requires a statement of assets and liabilities at the beginning and end of the fiscal year, all receipts, and the sources thereof, salary, allowances and other direct or indirect disbursements to officers and employees who receive more than $10,000 in the aggregate during the year, direct or indirect loans made to any officer, employee or member which aggregated more than $250 during the fiscal year and all direct or indirect loans to any business enterprise plus all other disbursements made including the purposes thereof. The Secretary of Labor under Title II, § 208 of the Act, 29 U.S.C.A. § 438 is authorized to issue rules and regulations prescribing the form and publication of required reports. Such a regulation has issued and it provides that an audit which is prepared for dissemination to members of the union may be submitted, supplemented by such additional statements as may be necessary to include all the specific information required under the Act. 29 C.F.R., § 415.1 et seq.

The sum and total of this case is that the union filed the report for the fiscal year 1959 and the members sought to verify it. Books and records were necessary to achieve this purpose. Their attorney in writing sought the permission of the president of the union to examine the books and records in this regard and pointed out the discrepancies which were later alleged in the complaint. The president replied that permission would be granted whenever a member could show just cause but stated that the letter did not set out just cause and denied the request.

All the vast discrepancies later disclosed followed this correspondence and the original complaint but the starting point of the disclosure was the effort to verify the report for the fiscal year 1959. It was undisputed that the union officers controlled the subsidiaries, and the facts show without contradiction that the affairs of the subsidiaries and the

3. Drug Store—$22,499.57; Glasco, Inc.—$48,772.93; Funeral Home—$20,907.49.

union were so inextricably related as to render an inspection of the union books and records alone ineffectual. We hold that just cause was shown for the inspection as authorized by the District Court, including the books of the subsidiaries. Cf. Rekant v. Rabinowitz, E.D.Pa., 1961, 194 F.Supp. 194 for a showing of just cause.

■ This leaves only the matter of inspection by auditors for the complainants. Appellants urge that the right of inspection is personal only to the members and that they may not be assisted by an auditor. The Act is silent on this question but the general law on the subject as it applies to the inspection of corporate books by a stockholder is both analogous and clear. In Finance Company of America at Baltimore v. Brock, 5 Cir., 1936, 80 F.2d 713, this court pointed out:

> " * * * It is well settled in Louisiana that stockholders have the right at reasonable times and places and for proper purposes to examine the books and papers of the corporation and to have the assistance of accountants in doing so. Legendre v. New Orleans Brewing Association, 45 La.Ann. 669, 12 So. 837, 40 Am.St.Rep. 243; Orlando v. Reliance Homestead Association, 171 La. 1027, 132 So. 777, 778. This is the law generally. Guthrie v. Harkness, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130, 4 Ann.Cas. 433; 7 R.C.L. Corporations, par. 298; 14 C.J. Corporations, §§ 1300, 1311."

This accords with the general rule set out in 13 Am.Jur. Corporations, § 438:

> "While the right to inspect the books of a corporation is, in a sense, personal to the stockholder, it is very generally held to include the right to have the assistance of a skilled agent, such as an attorney, accountant, or stenographer, if the stockholder desires such assistance. The possession of the right would be futile if the possessor through lack of knowledge necessary to its exercise were

debarred of the privilege to procure in his behalf the services of one competent to exercise it."

Here those seeking the right of inspection are longshoremen, unversed in financial records and accounting methods. The right to inspect would be utterly meaningless if it runs only to them. This is remedial legislation and our view is that Congress intended to create both a right and a remedy, with the remedy to be fashioned by the courts, where as here controversy obtains, with the end in view of giving force and meaning to the right when, and only when, good cause is shown. Good cause having been shown and the order, premised as it is on the statute, being reasonable in scope, the judgment is

Affirmed.