Diana Lollar HUBBARD, Individually and on behalf of all other persons similarly situated

v.

RUBBERMAID, INC. and Rubbermaid, Incorporated.

Civ. No. B–76–261.

United States District Court, D. Maryland.

Jan. 26, 1978.

Kenneth L. Johnson, Baltimore, Md., and Joseph A. Yablonski, Washington, D. C., for plaintiff.

Frank S. Astroth, Towson, Md.; and Edward Katze, Atlanta, Ga.; for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Plaintiff, a former market representative of Rubbermaid, brought this employment discrimination suit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* and the Fair Labor Standards Act, 29 U.S.C. §§ 201–219.[1] She claims that she, and the class she purports to represent, have been discriminated against on the basis of their sex. Presently there are four open motions before the court: (1) plaintiff's Motion for Reconsideration; (2) plaintiff's Motion for Further Relief; (3) plaintiff's Motion to Compel Answers to her Second Interrogatories; (4) plaintiff's Motion for Class Certification. Each of these is addressed separately below.

### Motion for Reconsideration

In the complaint filed in the instant action plaintiff alleged in paragraph 6(e) as follows:

> Plaintiff was discriminatorily denied an opportunity to transfer to the Richmond, Virginia, area incident to her decision late in 1975 to settle there; would other-

[1]. The facts of this case are fully set out in this court's Memorandum and Order of August 11, 1977. *Hubbard v. Rubbermaid,* 436 F.Supp. 1184 (D.Md.1977). In that Memorandum and Order, all of plaintiff's claims, except those relating to wages, benefits and terms and conditions of employment, were dismissed. Addi-

tionally, defendants' Motion to Strike paragraph 6(e) of the complaint was granted. Plaintiff has filed a motion asking the court to reconsider that part of the order striking paragraph 6(e) of the complaint. That motion is fully discussed *infra.*

wise be continuing to be employed by Defendant; and was, therefore, constructively discharged.

In its answer, Rubbermaid asserted the defense of lack of jurisdiction. Subsequent thereto, it filed a Motion to Dismiss or to Strike, asking, *inter alia*, that paragraph 6(e) of the complaint be struck because plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) with respect to the alleged discriminatory denial of transfer and constructive discharge claims raised therein. Hubbard opposed this on four grounds: (1) that by failing to raise this defense in its answer, defendant waived it; (2) that the discrimination was "like or related" to the charge previously filed with the EEOC, and therefore, under the Fourth Circuit's decision in *EEOC v. General Electric Corp.*, 532 F.2d 359, 365–66 (4th Cir. 1976), and the Fifth Circuit's decision in *Gamble v. Birmingham Southern R. R.*, 514 F.2d 678, 689 (5th Cir. 1975), there was no need to go back to the EEOC and file a new charge; (3) that the defendant was estopped from raising the defense because it waited until the 180-day filing period had expired before filing the motion to dismiss or strike; (4) that this court had ancillary jurisdiction over the claim of discriminatory denial to transfer under the decision in *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969). In its Memorandum and Order of August 11, 1977, this court granted defendant's motion to strike paragraph 6(e), rejecting, after discussion, plaintiff's argument based upon the *General Electric* and *Gamble* cases. 436 F.Supp. at 1193–94. Plaintiff does not directly challenge that reasoning in her Motion for Reconsideration. Instead she revives her other three arguments—waiver, estoppel and ancillary jurisdiction—urging that they be employed as a basis for reconsideration of this court's ruling.

Plaintiff filed her initial complaint of sex discrimination with the Montgomery County Commission on Human Relations on September 9, 1974. On January 2, 1975, the EEOC sent Rubbermaid a notice of that discrimination charge, which it received on January 13, 1975. On July 21, 1975, plaintiff filed a charge of discrimination with the EEOC. On November 26, 1975, the EEOC issued its letter of determination finding that Rubbermaid had not violated Title VII with "regard to wages, benefits and different terms and conditions of employment." Hubbard received her right to sue letter December 4, 1975. According to her deposition, she made inquiry in September or October 1975, regarding a possible transfer to a position in Richmond, Virginia (Hubbard Dep. pp. 43–44; 53). She was not transferred and on January 2, 1976, her employment with Rubbermaid terminated. She did not file any charge relating to this alleged "constructive termination" with the EEOC. For this reason, the court struck that part of her complaint asserting the claim of "constructive termination," finding that she was not excused from filing such a charge by reason of her pre-existing EEOC complaint. 436 F.Supp. at 1184–85.

Plaintiff now argues that, assuming the correctness of this court's prior reasoning, there is ancillary jurisdiction to include the claim for constructive discharge because Rubbermaid's refusal to transfer was in retaliation for the charges she had filed. This argument rests on *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir. 1969). In that case, the district court had dismissed a Title VII complaint for lack of jurisdiction. Plaintiff had been discharged by his employer while his appeal in a previously filed Title VII action was pending. He claimed that the discharge was in reprisal for his earlier filed charges of discrimination and sought injunctive relief in the district court as being ancillary to the case then pending on appeal. The district court found that it was without jurisdiction. The Fifth Circuit reversed, holding that a district court has ancillary jurisdiction over claims of discriminatory retaliation for previously filed EEOC charges, notwithstanding the lack of administrative exhaustion thereon. 411 F.2d at 1002–03. *Accord, Held v. Missouri Pacific Railroad Company*, 373 F.Supp. 996, 1002 (S.D.Tex.1974) (district court has ancillary

jurisdiction over alleged retaliatory discharge despite failure of plaintiff to file charge of retaliatory discharge with EEOC); *Askins v. Imperial Reading Corp.,* 420 F.Supp. 413, 415 (W.D.Va.1976) (allegations of retaliation which were not the subject of an EEOC complaint are sufficiently related to those charges upon which jurisdiction was predicated to be included in the action).

This court does not disagree with the holdings of these cases, but finds them inapplicable to the present action. The focal point of the ancillary jurisdiction findings was that the complaints alleged acts of *retaliation* for earlier asserted discrimination charges; no such allegation can be found, even by implication, in paragraph 6(e). Plainly stated, Hubbard did not claim that she was the object of reprisals by Rubbermaid for filing her various charges of discrimination; she simply alleged that she was "discriminatorily denied an opportunity to transfer . . . and was, therefore, constructively discharged." The contention in Hubbard's Motion to Reconsider that "the denial of transfer was sexually discriminatory and grew out of the filing of her Title VII charge,"[2] raises for the first time an argument which finds no factual support in the complaint or in the record as a whole.[3] As a result, the motion for reconsideration on the ground that this court has ancillary jurisdiction over the "constructive discharge" claim will be denied.

■ Hubbard also submits that the defendant waived the defense of failure to

exhaust administrative remedies in a timely fashion by not raising this issue until the time for filing an EEOC charge had expired. Alternatively, on this same factual basis, she argues that Rubbermaid should be estopped from raising this limitations defense.

The timely filing of charges with the EEOC is, of course, a jurisdictional prerequisite to the institution of a civil suit under Title VII of the Civil Rights Act of 1964. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 503 (1974); *McFadden v. Baltimore Steamship Trade Association,* 352 F.Supp. 403, 407 (D.Md. 1973), *aff'd,* 483 F.2d 452 (4th Cir. 1973), and a challenge to the district court's subject matter jurisdiction is not waivable and can be raised at any time. *Savarese v. Edrick Transfer & Storage Inc.,* 513 F.2d 140 (9th Cir. 1975); Fed.R.Civ.P. 12(h)(3). Therefore, Hubbard's claim that Rubbermaid somehow waived its right to contest the lack of administrative exhaustion is without merit. This is particularly true in light of the fact that Rubbermaid did raise the defense of lack of jurisdiction in its Answer dated April 21, 1976.[4]

In sum then, plaintiff has failed to meet the jurisdictional prerequisite of filing her claim of "constructive discharge" with the EEOC. Contrary to her apparent belief, defendant was under no duty to advise her of the need to do so. As the Supreme Court recently held in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), an employer is entitled to treat a past act as lawful if no charge of

---

**2.** Plaintiff's Memorandum in Support of Motion for Reconsideration at pp. 4–5. (Court Paper # 65).

**3.** In her opposition to defendant's original motion to dismiss, plaintiff did argue that this court has ancillary jurisdiction over the "constructive discharge" claim but made no contention that the alleged "constructive discharge" was retaliatory in nature. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss, to Strike, and/or for Summary Judgment at pp. 9–11. (Court Paper # 35).

**4.** This factor distinguishes this action from *DiFrischia v. New York Central R. R.,* 279 F.2d 141, 144 (3d Cir. 1960), cited by plaintiff.

There the defendant has actually stipulated to the jurisdiction of the court and did not move to dismiss the action until some two years later, after the statute of limitations had expired. Under those circumstances, the Third Circuit held that the defense of lack of jurisdiction would not be available to the defendant. Obviously that holding has no applicability to the case at bar where defendant raised the defense of lack of jurisdiction in its answer, never stipulated to jurisdiction and filed a formal motion to dismiss on jurisdictional grounds.

discrimination concerning that act is filed within the statutory limitations period. Since this court finds no reason to alter its Order of August 11, 1977, striking paragraph 6(e) of the complaint, plaintiff's Motion for Reconsideration will be denied.

### Motion for Appropriate Relief

█ Plaintiff's Motion for Appropriate Relief involves an interpretation of this court's Memorandum and Order of February 8, 1977. It directly relates to plaintiff's first interrogatories, filed on February 23, 1976, the very day this action was instituted. It also touches upon a separate lawsuit, *Rubbermaid v. Kleppe,* Civil No. B–76–1568. The background facts necessary for an understanding of the issues raised by this motion are set forth in detail below.

On February 23, 1976, the same day as this action was filed, plaintiff served upon defendant her first set of interrogatories. Included among her initial inquiries were Interrogatories 10, 11, and 12, which requested information relative to defendant's commercial dealings with the United States, asked whether the defendant was subject to Executive Order 11246[5] and requested defendant to describe in detail the nature of its dealings with the United States, the content of its reports to Government Contract Compliance Agencies, and the identity of documents, reports and correspondence exchanged with such agencies. In each instance, defendant was given the option of identifying, and making available for copying, those documents which would provide answers to the interrogatories.[6] Defendant refused to answer these three interrogatories, objecting to them on the grounds that, "[Defendant's] contracts are beyond the purview of this action in that this matter is brought under and pursuant to Title VII of the Civil Rights Act of 1964 rather than Executive Order 11246, for which there is a separate and independent enforcement scheme." Plaintiff filed a motion to compel answers to these questions which was granted by this court on August 20, 1976. Defendant, in accordance with the court order, filed supplemental answers to plaintiff's Interrogatories 10, 11, and 12 on October 1, 1976. Feeling that these supplemental responses were insufficient and not in keeping with this court's directive, plaintiff filed a motion for sanctions against defendant and its counsel.

During this same time frame, plaintiff attempted to procure Rubbermaid's federal contract compliance documents under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. She made her request to the Department of the Interior on October 5, 1976, asking that the Department make available for inspection and copying all of Rubbermaid's Office of Federal Contract Compliance (OFCC) filings. The request covered not only the documents of Rubbermaid, Incorporated, but also included those of Rubbermaid Commercial Products, Inc. and Rubbermaid Industrial Products Corporation, both of which are wholly owned subsidiaries of Rubbermaid, Incorporated.

On October 8, 1976, Rubbermaid was notified of Hubbard's request and objected to the requested disclosure. Subsequently, on October 18, 1976, it filed an action in this court, seeking an injunction to prevent disclosure of the requested document.[7] Following a hearing, Judge Miller granted a temporary restraining order preventing disclosure of the requested documents. A preliminary injunction hearing was held before this court on October 28, 1976, and a Memorandum and Order was issued on November 5, 1976. In that Memorandum and Order, this court found that Rubbermaid's employer information reports (EEO–1), compliance review reports (CRR), affirmative action

---

**5.** This Order prohibits the Government from contracting with companies which engage in discrimination. Executive Order No. 11246, 30 F.R. 12319 (1965), as amended by Executive Order No. 11375, 32 F.R. 14303 (1967).

**6.** This option was expressly stated in the interrogatories themselves. Of course, such a state-

ment was unnecessary as the option to produce business records is provided by law. Fed.R. Civ.P. 33(c).

**7.** That case was docketed separately and was titled *Rubbermaid, Incorporated, et al. v. Kleppe, et al.* Civil No. B–76–1568.

programs (AAP), and other supporting documents which Rubbermaid had been required to submit to the Department of the Interior and the OFCC, were confidential and therefore exempt from disclosure under 5 U.S.C. § 552(b)(4). A preliminary injunction to this effect was entered on December 8, 1976.

At the time this court entered these orders in the *Kleppe* case, it had pending before it the aforementioned plaintiff's Motion for Sanctions Against Defendant and its Counsel.[8] In that motion plaintiff took the position that defendant had failed to comply with this court's order of August 20, 1976, granting her Motion to Compel. She contended the defendant's supplemental answers to Interrogatories 10, 11, and 12 fell woefully short of being full and complete replies. Sanctions of various types were sought, among them an order requiring defendant to produce and copy, at its own expense, all documents covered by Interrogatories 10, 11, and 12. These documents would be those that the defendant had, up to that point, failed to identify; they would include all OFCC reports and correspondence.[9]

On February 8, 1977, this court issued a Memorandum and Order, finding that defendant had violated its Order of August 20, 1976, by failing to satisfactorily answer Interrogatories 10, 11, and 12. As a result, plaintiff's Motion for Sanctions was granted and the defendant was ordered to produce, at its own expense, copies of the actual documents sought by these interrogatories. It was noted in the Memorandum and Order that, "the *Kleppe* documents are, by and large, the ones the present interrogatories seek to have identified." Hence, the *Kleppe* documents were those that defendant was being ordered to produce.

Incredibly enough, defendant continued to resist production of these documents.

**8.** This motion was filed on October 27, 1976 (Court Paper # 41).

**9.** A reading of plaintiff's Motion for Sanctions and of her Reply Memorandum in Support of her Motion for Sanctions, makes it clear that she was asking the court to order defendant to

On February 28, 1977, it filed a Motion to Defer Compliance with Order Dated February 8, 1977, asking that compliance with that Order be deferred until thirty days subsequent to the court's ruling on plaintiff's Motion for Conditional Class Certification. The Motion to Defer was denied by Chief Judge Northrop on March 7, 1977. Finally on March 9, 1977, defendant sent copies of the documents to counsel for the plaintiff.

Despite these previous developments, which have required a substantial output of time and energy by the undersigned judge, the court finds that it must once again consider Interrogatories 10, 11, and 12 in the context of Plaintiff's Request for Further Relief. It does so with reluctance, feeling that the parties should have long ago resolved this matter on their own, particularly in light of the guidance provided by the court in its various Orders, described above.

Plaintiff argues in her Request for Further Relief that defendant has failed to provide here with all of the documents it was ordered to produce. The gravamen of her motion is that defendant did not provide any documents or materials from Rubbermaid Commercial Products, Inc. or Rubbermaid Industrial Products, the two wholly owned subsidiaries of Rubbermaid. She contends that these documents were within the perimeter of this court's February 8, 1977 Order and that in failing to produce them defendant is engaging in a "corporate shell game."

Defendant, of course, submits that these documents need not be produced, arguing that the two subsidiary corporations are not parties to this suit, that the corporate entity should not be cast aside and that neither of the subsidiaries are subject to the jurisdiction of this court.

provide all of the documents which were at issue in the *Kleppe* case. *See* Reply Memorandum of Plaintiff in Support of her Motion for Sanctions at page 7 (Court Paper # 43, filed November 16, 1976).

At this point in time the court has little patience with defendant's continuing effort to avoid production of the OFCC documents. The defendant was ordered to produce the *Kleppe* documents—this did not mean some of the *Kleppe* documents, it meant *all* of the *Kleppe* documents. That order was entered after due consideration and, of course, was partially punitive in response to defendant's conduct in resisting discovery up to that point.

The defendant's arguments against production merit little discussion. The fact that we are dealing with separate corporate entities here is irrelevant. No attempt is being made to "pierce the corporate veil." Furthermore, the nonparty status of the wholly owned subsidiaries does not shield their documents from production. *Local No. 1419, ILA, General Longshoremen Workers Union v. Smith*, 301 F.2d 791, 796 (5th Cir. 1962); *Advance Labor Service, Inc. v. Hartford Accident and Indemnity Company*, 60 F.R.D. 632, 633–34 (N.D.Ill.1973); *George Hantscho Company v. Miehle-Goss-Dexter, Inc.*, 33 F.R.D. 332, 334–35 (S.D.N.Y.1963). The crucial factor is that the documents must be in the custody, or under the control of, a party to the case. 4A *Moore's Federal Practice,* ¶ 34.17 at p. 34–98. Here the documents in question are under the control of Rubbermaid. They are, therefore, subject to production.

Plaintiff's Request for Appropriate Relief will be granted. Defendant shall be required to produce all documents which were involved in the *Kleppe* case, including those relating to its two wholly owned subsidiaries, Rubbermaid Commercial Products, Inc. and Rubbermaid Industrial Products Corporation. These documents shall be subject to the Protective Order and Stipulation entered June 10, 1976.

*Motion to Compel Discovery*

Having thus finally disposed of all discovery disputes surrounding plaintiff's first interrogatories, the court finds itself faced with plaintiff's Motion to Compel Answers to her Second Interrogatories. Hoping that the imbroglio associated with the first set of interrogatories is not to be repeated with the second set, the court now turns to this motion.

Plaintiff's second interrogatories were filed on July 29, 1976. In response thereto, defendant moved for a stay of discovery. While no formal stay was entered, defendant, relying on its motion, would not provide answers until such time as a ruling was made on its Motion to Dismiss. As stated earlier, that ruling was made on August 11, 1977. As a result the *de facto* stay of discovery was lifted and defendant filed answers to plaintiff's second interrogatories on October 3, 1977. However, in doing so defendant declined to answer thirteen interrogatories in their entirety and parts of six others.[10] Defendant's objection to each of these inquiries was the same:

> Defendant objects to this interrogatory as being beyond the scope of the case. This objection has already been brought to the Court's attention.

There is no need to address each of these interrogatories seriatim; rather, they are conducive to division into three distinct areas: (1) those dealing with job progression, and salary and benefits incident thereto, within defendant's marketing operations,[11] (2) those dealing with salary and benefit data and male-female ratios in defendant's divisions other than marketing[12] and, (3) those dealing with defendant's recruitment policies.[13]

In her motion plaintiff seeks to compel answers to those interrogatories in the first and second categories. She does not seek to

**10.** The interrogatories defendant did not answer are: 2(b), (c), (e), (f); 9(c), (d), (e); 10(b), (k); 11(b); 12(c); 13; 14; 15; 16; 17; 20(f) thru (i); 25; 26; 27; 28; 30; 31; 32; and 33.

**11.** This category includes Interrogatories 2(b), (c), (e), (f); 9(c), (e); 10(b), (k); 11(b); 12(c);

13; 14; 15; 16; 17; 20(f)–(i); 27; 28; and 31(a).

**12.** This category includes Interrogatories 30; 31(b), (c), (d), (e); 32 and 33.

**13.** This category includes Interrogatories 9(d); 25 and 26.

compel answers to those in the third category.

Defendant argues that the interrogatories to which objections were raised do not concern wages, benefits and terms and conditions of employment but, rather, seek miscellaneous and minute details on initial job assignment, promotion, previous positions, hiring, termination and other issues originally alleged by plaintiff which have been specifically excluded from this litigation by the court's Memorandum and Order of August 11, 1977.

Plaintiff, on the other hand, contends that the inquiries at issue are relevant to the case as it is presently defined, particularly under the relaxed standard of Rule 26(b), Fed.R.Civ.P. The court agrees with plaintiff and will grant her Motion to Compel.

The scope of discovery is defined by Fed.R.Civ.P. 26(b), which provides:

> *(b) Scope of Discovery.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
>
> (1) *In General.* Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The United States Supreme Court has said that the discovery rules are to be broadly and liberally construed. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). This is especially true in Title VII cases, where statistical data, obtainable mainly through discovery, often plays a crucial role at trial. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 305 (5th Cir. 1973). In *Burns*, it was held that an individual plaintiff, suing for himself or on behalf of a class, has the same right of access to an employer's information as the EEOC has when conducting an investigation into claimed discrimination. 483 F.2d at 305. The investigatory powers of the EEOC are broad indeed, *Graniteville Co. v. EEOC*, 438 F.2d 32, 39–41 (4th Cir. 1971); hence, a defendant resisting discovery in a Title VII case on the grounds of irrelevancy embraces quite a difficult task. This is not to say that the irrelevancy objection does not exist; to the contrary, the district court had wide discretion in deciding discovery disputes. The rules themselves provide:

> [The court] may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense [resulting from discovery].

Fed.R.Civ.P. 26(c). Implicit therein is the right to limit or halt discovery that extends beyond the bounds of the issues presented in any given case. Nevertheless, on balance, defendant's objections to plaintiff's interrogatories must be overruled and plaintiff's Motion to Compel granted.

In its most simplified form, this case involves plaintiff's claim that defendant has engaged in sex discrimination by assigning employees as market or sales representatives solely on the basis of their sex. She claims that women are assigned to the lower paying position of market representative, while performing basically the same function as men, who are generally assigned the more desirable position of sales representative. Hubbard herself worked as a market representative, a position which is part of Rubbermaid's marketing operation as is that of sales representative. Viewed in this light it is hard to fathom how Rubbermaid can argue that the interrogatories in the first category—those relating to job progression, and salaries and benefits incident thereto, within its marketing operation—

are outside the scope of this case. While it is true that the scope of this litigation has been limited to Rubbermaid's employment practices regarding wages, benefits and terms and conditions of employment, it does not follow that each and every article of discovery sought must directly inquire into the amount of wages paid, or benefits bestowed, within the marketing operation. Surely, less direct inquiry into that operation "appears reasonably calculated to lead to the discovery of admissible evidence." As an example, questions relating to possible classification of one group in a lower paying position is certainly within the ambit of "wages, benefits and terms and conditions of employment." The information sought by the first category of disputed interrogatories is therefore discoverable.

The second category—those interrogatories dealing with salary and benefit data and male-female ratios in defendant's divisions other than marketing—presents a less clear question. Information outside the marketing division is less obviously related to claimed discrimination within that division. Notwithstanding this tangential connection, the weight of authority is that discovery in a Title VII action is not limited to plaintiff's department or division of employment, but may be company-wide in scope. *Graniteville Co. v. EEOC*, 438 F.2d 32, 42 (4th Cir. 1971); *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969); *N.O.W., Inc. v. Minnesota Mining and Manufacturing Co.*, 73 F.R.D. 467, 472 (D.Minn. 1977). The logic behind this rule is that non-departmental data may well lead to relevant evidence tending to show discrimination within the department in question. This is especially so in view of the importance of statistics and empirical data in a Title VII case. Accordingly, this court finds that plaintiff's second category of interrogatories seeks discoverable information. Her Motion to Compel will be granted.

## Motion for Class Certification

This brings the court to the question of what class, if any, to certify in this action. Plaintiff has moved for certification of an across-the-board class consisting of all past, present and future female employees of Rubbermaid.[14] Defendant opposes the certification of any class and argues, in the alternative, that the class should be limited to female market representatives who are currently employed in Rockville, Maryland by Rubbermaid or were so employed as of April 30, 1975 (300 days before the initiation of this suit).

Before addressing the merits of the pending motion, the court notes the liberal view that class actions have been accorded in the Title VII context. The Fourth Circuit has said:

> Viewed broadly, Barnett's suit is an "across the board" attack on all discriminatory actions by defendants on the ground of race and when so viewed *it fits comfortably within the requirements of Rule 23(b)(2)*. We believe such a characterization is more consonant with the broad remedial purpose of Title VII itself, and that the district court's less charitable view, under which Barnett could as a class representative challenge only those specific actions taken by the defendants toward him, would undercut those purposes. (emphasis added) (citation omitted).

*Barnett v. W. T. Grant*, 518 F.2d 543 at 547–48 (4th Cir. 1975). *Accord, Long v. Sapp*, 502 F.2d 34, 42–43 (5th Cir. 1974); *Bowe v. Colgate-Palmolive Company*, 416 F.2d 711, 719–20 (7th Cir. 1969). This is not to say that all Title VII actions are automatically certifiable. The dangers of treating the requirements of Rule 23 too lightly were well described by Judge Godbold in his concurring opinion, *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969):

> The pleadings structure no class by defined acts, by time, by persons, by

---

14. Counsel for plaintiff conceded at oral argument that applicants for employment should not be included in any class certified.

plant, by department, by supervisor, or by any other means. The [plaintiff] has done no more than name the preserve on which he intends to hunt. Over-technical limitation of classes by the district courts will drain the life out of Title VII, as will unduly narrow scope of relief once discriminatory acts are found. But without reasonable specificity the court cannot define the class, cannot determine whether the representation is adequate, and the employer does not know how to defend. And, what may be most significant, an over-broad framing of the class may be so unfair to the absent members as to approach, if not amount to, deprivation of due process. Envision the hypothetical attorney with a single client, filing a class action to halt all . . . discrimination in all the numerous plants and facilities of one of American's mammoth corporations. One act, or a few acts, at one or a few places, can be charged to be part of a practice or policy quickening an injunction against all . . . discrimination by the employer at all places. It is tidy, convenient for the courts fearing a flood of Title VII cases, and dandy for the employees if their champion wins. But what of the catastrophic consequences if the plaintiff loses and carries the class down with him, or proves only such limited facts that no practice or policy can be found, leaving him afloat but sinking the class?

. . . . .

The broad brush approach of some of the Title VII cases is in sharp contrast to the diligence with which in other areas we carefully protect those whose rights may be affected by litigation. If this were an individual cross-action against an employee at one of appellee's remote terminals we would turn intellectual handsprings over questions of notice and process to him and opportunity to protect his interests—such issues as whether the marshal dropped the notice at the door or handed it to the child at the front gate.

But when the problem is multiplied many-fold, counsel, and at times the courts, are moving blithely ahead tacitly assuming all will be well for surely the plaintiff will win and manna will fall on all members of the class. It is not quite that easy.

417 F.2d at 1126–27.

The policies reflected by *Barnett* and by Judge Godbold's opinion in *Johnson*, are both of obvious importance. It is the tension between those policies which makes a class determination particularly difficult in a Title VII action. The Supreme Court has apparently attempted to strike a balance. They have said:

> We are not unaware that suits alleging . . . discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges . . . discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.

*East Texas Motor Freight v. Rodriguez*, 431 U.S. 395 at 405–06, 97 S.Ct. 1891, at 1898, 52 L.Ed.2d 453 (1977). Thus, with a view toward the liberality extended to Title VII class actions, and an awareness of the pitfalls of certifying an overbroad class, the court turns to the substance of plaintiff's Motion for Class Certification.

As an employee of Rubbermaid, plaintiff was engaged in the sale of defendant's products to retail and other outlets, holding the position of market representative on defendant's Home Products Field Sales staff. The Field Sales staff is also composed of sales representatives, district sales managers and division sales managers.

As of December 31, 1976, Rubbermaid employed approximately 1,750 persons.[15]

---

**15.** These figures are derived from Exhibit J attached to plaintiff's Supplemental Motion for Certification of an Across-the-Board Class

(Court Paper # 56). They will be approximated to make them easier to deal with.

Of these, roughly 1,150 are production (hourly paid) employees; 650 are salaried. A total of 900 of the employees were women; 850 were men. Within the Field Services Sales staff there are 113 employees; 58 males and 55 females. There are 58 males working as sales representatives with 7 females holding this position. No males hold the job of market representative, this position being held solely by females, 48 in number.

As stated earlier, this case basically involves plaintiff's claim that women are assigned the lower paying, less desirable position of market representative based solely on their sex. She alleges that, in fact, the market representatives perform essentially the same duties as do sales representatives and therefore are being discriminated against in regard to wages, benefits and terms and conditions of employment. It is in the context of this claim that the class determination must be made.

As plaintiff concedes, she bears the burden of establishing that this action meets the requirements of Rule 23(a). *Nance v. Union Carbide Corp.*, 540 F.2d 718, 722–23 (4th Cir. 1976), *vacated and remanded on other grounds*, 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977). That rule reads as follows:

> *(a) Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In essence then there are four elements that the plaintiff must demonstrate in order to have a class certified in her action: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

Originally plaintiff moved to certify a limited class, consisting only of past, present and future female employees within defendant's Field Service Sales operation, i. e., those employees within the division where plaintiff actually worked. Later, upon receiving further discovery, she expanded her request to include the across-the-board class described above. Defendant contends that neither of these proposed classes meets the requirements of Rule 23(a). It argues at the outset that any class certified should be limited to female employees of Rubbermaid in Rockville, Maryland, contending that plaintiff worked in the Rockville area, that her EEOC charge named "Rubbermaid, Incorporated, Rockville, Md.," as the respondent and that she has been unable to demonstrate that personnel decisions are made centrally rather than at the individual locations. This argument must be rejected. There is no such legal entity as "Rubbermaid, Incorporated, Rockville, Md." The description "Rockville, Md." was added to the EEOC charge merely because that is the home of Paul Foringer, defendant's district sales manager for Maryland, who was plaintiff's immediate supervisor. The EEOC record clearly indicates that Rubbermaid, Inc. was the respondent before the Commission. The "Receipt for Copy of Charge of Discrimination" issued by the EEOC was signed by James A. Morgan, Assistant Secretary and Counsel for Rubbermaid, Inc.[16] Additionally, the EEOC file contains a letter sent to the Montgomery County Commission on Human Relations [17] which deals with plaintiff's claim of discrimination. That letter, again signed by James A. Morgan, Assistant Secretary and Counsel, is under the letterhead of Rubbermaid, Incorporated, Wooster, Ohio. Further, a copy of the Notice of Right to Sue was also sent to and received by James A. Morgan at Rubbermaid's head-

---

16. *See* Exhibit 3 attached to defendant's Motion to Dismiss (Court Paper # 23).

17. *See* Exhibit A attached to plaintiff's Reply to Defendant's Opposition to Conditional Class Certification (Court Paper # 31).

quarters.[18] Unquestionably then, Rubbermaid, Inc. of Wooster, Ohio was the respondent before the EEOC.

Also, this court feels that plaintiff has sufficiently shown, at least for purposes of this motion, that hiring and personnel policies emanated from Rubbermaid's headquarters. First of all in deciding the class question the court will not examine the merits of plaintiff's complaint, but will simply use the discovery had to identify the type and character of the claim. *Doctor v. Seaboard Coast Line Railroad Company,* 540 F.2d 699, 708 (4th Cir. 1976). Defendant's argument concerning localized personnel decisions is addressed to the merits of the case. Moreover, preliminary indications are that Rubbermaid itself, rather than its districts or divisions, controls the personnel policy throughout the company. Defendant's Answer to plaintiff's Interrogatory 19 (First Set) shows that Rubbermaid created and defined the positions within the Field Service Sales staff.[19] In light of this fact it can hardly be said that the marketing districts of Rubbermaid are autonomous in their hiring and personnel functions. Therefore, defendant's argument that any class certified should be limited to the Rockville, Maryland area must be rejected.

The numerosity requirement is easily met by either of plaintiff's proposed classes. There are more than 50 females within the Field Services Sales staff. This is sufficient to meet the numerosity requirement. *Cypress v. Newport News General & Nonsectarian Hospital Association,* 375 F.2d 648, 653 (4th Cir. 1967) (18 persons held to be a sufficiently large number to constitute a class). Obviously, if the Field Services Sales staff is sufficiently large for class purposes, then the larger proposed group, including all of Rubbermaid's female employees, also satisfies the numerosity prerequisite.

The commonality requirement also poses no problem to plaintiff. There are questions of law and fact which are common to the potential classes proposed. Just as race has been found to be the common factor in racial discrimination cases, *Barnett v. W. T. Grant,* 518 F.2d 543, 547–48 (4th Cir. 1975); *Long v. Sapp,* 502 F.2d 34, 42–43 (5th Cir. 1974), sex is likewise the common unifying element in sex discrimination cases. *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 250 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719–20 (7th Cir. 1969). As stated by Professor Moore, "[A] suit under the Civil Rights Act by an employee challenging employment and promotional discrimination is, by the nature of the claim asserted, appropriate for class action . . .." 3B *Moore's Federal Practice,* ¶ 23.40 at 23–651 (2d ed. 1977). Hence, plaintiff has met the commonality requirement.

Plaintiff asserts that the typicality prerequisite should be treated as merely an adjunct of the requirement of commonality. It is true that this approach has been taken by a number of courts in the past. *See, e. g., Barnett v. W. T. Grant,* 518 F.2d 543, 547–48 (4th Cir. 1975). However, this court feels that to so lightly dismiss the typicality requirement renders it meaningless. This ·is unacceptable. The better practice is to view the typicality requirement in conjunction with that of adequacy of representation. *Taylor v. Safeway Stores,* 524 F.2d 263, 270 (10th Cir. 1975). Taken together, they mandate the showing of a nexus between the plaintiff and the class she seeks to represent. Such a showing will insure that plaintiff's claims are typical of the claims of the class and will also insure that she will fairly and adequately protect the interests of the class.

Included in this concept of nexus is the fact that plaintiff must be a member of the class she seeks to represent. *East Tex-*

---

**18.** *See* Exhibit C attached to plaintiff's Reply to Defendant's Opposition to Conditional Class Certification.

**19.** *See also* Exhibits C and D attached to defendant's Response to Plaintiff's First Interrogatories (Court Paper # 17).

as *Motor Freight v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). Stated another way, the representative party must be one who has been personally aggrieved by the alleged discrimination. *Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d 699, 711 (4th Cir. 1976). To some extent, meeting these prerequisites depends on the level at which the class and the claim are defined. For example, viewed in its broadest form the proposed across-the-board class could be defined simply as "women employees;" the claim as one for "discrimination." So defined, plaintiff would be a member of the class and one who, assuming her allegation to be true, had been personally aggrieved by defendant's conduct. But to so define both class and claim ignores the fact that "women employees" includes hourly and salaried employees, clerical and non-clericals, sales and non-sales personnel, etc. By the same token, discrimination is a broad term containing many subparts, e. g., discrimination as to wages, benefits, promotions, transfers, seniority systems, etc. So viewed, plaintiff is not a member of the class, instead she is a member of only one small part of the class—that part containing female sales personnel. Moreover, she has not been personally aggrieved by any discriminatory practices which may have been taken against non-sales employees. In essence then, her nexus with the employees outside of defendant's Field Services Sales staff is too attenuated to permit their inclusion in the class. Their job experience and working conditions are unlike plaintiff's own. Stated simply, she is not the proper person to represent hourly, production, clerical, and other non-sales employees in a claim against Rubbermaid. As a result the class certified will include all female employees within defendant's Field Services Sales staff,[20] i. e., all female sales employees. Employees outside of this division will not be included in the class.

Defendant claims that as a former employee, plaintiff is not an appropriate representative of the class of female sales employees. This contention is without merit. As stated in *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975):

We believe that a former employee, who is not entitled to reinstatement, may still be an adequate representative of a class of past and present employees alleging discriminatory employment practices. Whether a party adequately represents a class depends on all the circumstances of the particular case. 3B J. Moore, Federal Practice ¶ 23.07[1] (2d ed. 1974). That a person is no longer employed with a company and is not entitled to reinstatement is but one of the circumstances to be considered in the determination of whether Rule 23(a)(4) has been met. In fact, as the court observed in *Mack v. General Electric Co.*, 329 F.Supp. 72, 76 (E.D.Pa. 1971), with respect to plaintiffs who were former employees of the company, "being familiar with [the company's] employment practices and being free from any possible coercive influence of [the company's] management, [the plaintiffs] are better situated than either job applicants or present employees to present an intelligent and strongly adverse case against [the company's] alleged discriminatory practices." Moreover, were the position advanced by Liberty Mutual adopted, employers would be encouraged to discharge those employees suspected as most likely to initiate a Title VII suit in the expectation that such employees would thereby be rendered incapable of bringing the suit as a class action. *Reed v. Arlington Hotel Co.*, 476 F.2d 721 (8th Cir.), cert. denied, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973).

508 F.2d at 247. *See also Piva v. Xerox Corp.*, 70 F.R.D. 378, 388 (N.D.Cal.1975). Hence, plaintiff's status as a former employee does not render her incompetent as a

---

**20.** Defendant's argument that plaintiff may not represent part-time female market representatives is unavailing. Plaintiff's claims are typi-
cal of part-time market representatives and they will therefore be included in the class.

class representative. This court feels that, in fact, she is an adequate representative of the limited class described above.

The parties are in disagreement as to the applicable date for inclusion of past employees of Rubbermaid. Plaintiff avers that the class should include female employees who were employed by defendant two years prior to the filing of her charge on September 9, 1974 with the Montgomery County Commission on Human Relations. Defendant contends that the applicable date is April 30, 1975 (300 days before the initiation of this suit). Both parties are incorrect. It is not necessary for all class members to file charges with the EEOC, so long as the named plaintiff does so. *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir. 1969). Any person who could have filed a charge on the date the named plaintiff filed her charge, may be properly included in the class. *Wetzel, supra*, 508 F.2d at 246; *CWA v. New York Telephone Co.*, 8 FEP Cases 509, 513 (S.D.N.Y.1974). Since Maryland is a "deferral" state, an employee has 300 days from the commission of the alleged unlawful employment practice to file with the EEOC. 42 U.S.C. § 2000e–5(e). Therefore, the relevant time period began to run 300 days prior to plaintiff's filing with the EEOC. Here plaintiff's original charge was filed with the Montgomery County Commission on Human Relations.[21] A copy of that charge was received by the EEOC on October 21, 1974. Hence, the date of filing with the EEOC was October 21, 1974. Accordingly, the applicable date for inclusion of past employees is December 24, 1973 (300 days before October 21, 1974).

Aside from her Title VII claims, plaintiff's suit is founded on the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, which includes the Equal Pay Act of 1963, 29 U.S.C. § 206. Defendant submits that the class action device is not available to redress violations of the Equal Pay Act. This argument is bottomed on 29 U.S.C.

§ 216, which requires written consent from all plaintiffs in an Equal Pay Act suit. Defendant is correct in this contention. A class action is permissible under 29 U.S.C. § 216(b) only to the extent that other prospective plaintiffs have submitted consents. *American Finance System Inc. v. Harlow*, 65 F.R.D. 94, 110 (D.Md.1974). In this case, only Hubbard has filed her consent. Accordingly, the class to be certified will not include her claims under the Equal Pay Act; it shall be limited to the Title VII allegations.

Finally, the court must determine what type of class action is proper for this case. Rule 23(b) states the three types of possible class actions. Plaintiff seeks to maintain this action under Rule 23(b)(2), which provides:

> *(b) Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> .    .    .    .    .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole  .    .  ..

The propriety of certification pursuant to 23(b)(2) of suits against discriminatory policies has been widely acknowledged. *See Wetzel, supra*, 508 F.2d at 251. This includes suits where, as here, an equitable award of back pay is sought. *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir. 1971), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972). Hence, in this case, the class shall be certified under Rule 23(b)(2).

Accordingly, it is this 26th day of January, 1978, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiff's Motion for Reconsideration be, and the same hereby is, DENIED.

---

**21.** Under Article 49B, § 12 of the *Annotated Code of Maryland*, a charge filed with a local human relations commission is deemed to be a charge filed with the Maryland Commission on Human Relations.

2. That plaintiff's Motion for Appropriate Relief be, and the same hereby is, GRANTED.

3. That plaintiff's Motion to Compel Answers to her second interrogatories be, and the same hereby is, GRANTED.

4. That this action be, and the same hereby is, certified as a class action in accordance with the provisions of Rule 23(c)(1) of the Federal Rules of Civil Procedure. This class action shall proceed under the provisions of Rule 23(b)(2) of the Federal Rules of Civil Procedure and shall extend only to those claims in the present lawsuit brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* The class represented by the plaintiff shall consist of:

(a) All present female employees of Rubbermaid, Incorporated, employed in its Home Product Field Sales operations.

(b) All former female employees of · Rubbermaid, Incorporated, employed in its Home Product Field Sales operations during the period December 24, 1973 to the date hereof.

(c) All future female employees of Rubbermaid, Incorporated, employed in its Home Products Field Sales operations who are hired during the pendency of this action.

Notice to the class will not be required at this time.

It is FURTHER ORDERED that this court hereby retains jurisdiction, pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, to alter, amend, modify, annul, vacate, or supplement this Order from time to time as further information may dictate.